STATE OF NORTH CAROLINA v. JOSEPH ANTHONY RICHARDSON

No. 9212SC863

(Filed 21 September 1993)

**1. Criminal Law § 817 (NCI4th) — testimony admitted for corroboration — limiting instruction proper**

The trial court did not err in instructing the jury that testimony "is being offered by the state to corroborate the testimony of a witness who has already testified" rather than limiting such testimony to the corroboration of certain child witnesses.

**Am Jur 2d, Criminal Law §§ 855 et seq.**

**2. Evidence and Witnesses § 962 (NCI4th) — taking indecent liberties with minor — victims' interviews with mental health professional — admissibility under medical treatment or diagnosis exception to hearsay rule**

In a prosecution of defendant for taking indecent liberties with a minor and crime against nature, statements made by the child victims to a mental health consultant for the Child Medical Evaluation Program at the UNC Children's Hospital were admissible under the medical diagnosis and treatment exception to the hearsay rule set forth in N.C.G.S. § 8C-1, Rule 803(4) where the witness's interviews of the children in this case, conducted within two months of the last assault and less than four weeks from the date of the victims' disclosures, were conducted to assist a physician who diagnosed both children as being victims of sexual trauma.

**Am Jur 2d, Evidence §§ 683-686.**

**Admissibility of statements made for purposes of medical diagnosis or treatment as hearsay exception under Rule 803(4) of Federal Rules of Evidence. 55 ALR Fed. 689.**

**3. Evidence and Witnesses § 2332 (NCI4th) — taking indecent liberties with minor — general characteristics of sexually abused children — expert testimony admissible**

In a prosecution of defendant for taking indecent liberties with a minor and crime against nature, the trial court did not err in admitting expert testimony concerning general

STATE v. RICHARDSON

[112 N.C. App. 58 (1993)]

characteristics of sexually abused children, behavioral problems in those who have been abused, and children's disclosure patterns, since the testimony could help the jury understand the behavior patterns of sexually abused children and assist it in assessing the credibility of the victims; the testimony was therefore relevant to rebut the defense that the children fabricated the abuse; and the testimony was not offered for the substantive purpose of showing that a sexual assault had occurred.

**Am Jur 2d, Expert and Opinion Evidence §§ 33 et seq.**

**Necessity and admissibility of expert testimony as to credibility of witnesses. 20 ALR3d 684.**

4. **Evidence and Witnesses § 2335 (NCI4th) — taking indecent liberties with minor — expert pediatrician — testimony as to molestation — admission not error**

In a prosecution of defendant for taking indecent liberties with a minor and crime against nature, the trial court did not err in admitting the testimony of a pediatrician who was qualified without objection as an expert in the area of pediatrics and diagnosis of child sexual abuse that the victims had been sexually molested.

**Am Jur 2d, Expert and Opinion Evidence §§ 243 et seq.**

5. **Criminal Law § 730 (NCI4th) — jury instructions — reference to prosecuting witnesses as victims — no error**

In a prosecution of defendant for first-degree sexual offense, first-degree rape, taking indecent liberties with a minor, and crime against nature, the trial court did not commit plain error in referring to the prosecuting witnesses as "victims" in its jury charge.

**Am Jur 2d, Trial § 1123.**

Appeal by defendant from judgments entered 20 March 1992 by Judge Orlando F. Hudson in Cumberland County Superior Court. Heard in the Court of Appeals 14 June 1993.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Ellen B. Scouten, for the State.*

*Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellate Defender Mark D. Montgomery, for defendant appellant.*

COZORT, Judge.

Joseph Anthony Richardson was indicted on two counts of first-degree sexual offense, two counts of first-degree rape, four counts of taking indecent liberties with a minor, and two counts of crime against nature. He was convicted of four counts of taking indecent liberties with a minor and two counts of crime against nature. He was sentenced to six consecutive ten-year prison terms. Defendant raises several issues on appeal, contesting various rulings made during the trial and instructions given to the jury. We find the defendant received a fair trial free from prejudicial error.

The State's evidence presented at trial consisted primarily of the testimony of three children who testified that the defendant had sexually abused them. Two of the children are female (S.M. and F.M.), and one is male (W.M.). W.M. and S.M. became acquainted with the defendant when W.M. was seven years old and S.M. was five years old. Defendant was the maintenance man at the Cross Creek Trailer Park where the children resided with their mother, beginning in November of 1990. Defendant often baby-sat for the children on Saturdays and Sundays while their mother worked as a nurses' assistant in a nursing home.

Sometime in December of 1990, W.M.'s teacher's assistant overheard W.M. making comments to other children in the class, asking whether they had heard of "boys pumping boys," or "men pumping boys." She relayed the information to W.M.'s teacher, who had also noticed that children in the class were teasing W.M. and calling him a "faggot." On 23 January 1991, W.M.'s teacher saw him crying in the hall at school. She took W.M. aside, spoke to him, and accompanied him to see Ms. Diane Sena, the school counselor.

W.M. told Ms. Sena that defendant had been forcing him to suck defendant's penis. W.M. also told Ms. Sena that he observed defendant having sex with his sister, S.M., during Christmas vacation. Ms. Sena questioned S.M., who told the counselor that defend-

ant was "putting his private in my private." S.M. told Ms. Sena that the defendant would give her candy to engage in such activity and that she was not supposed to tell anyone. Ms. Sena contacted the children's mother and made an appointment for the children to speak with an officer from the Cumberland County Sheriff's Department. On 29 January 1991, Detective Karen Solomon interviewed both W.M. and S.M. At the interview, S.M. told Detective Solomon that defendant got on top of her, pulled his pants down, pulled her pants down, and would not let her get up. S.M. stated that defendant kissed her and put his "ding-a-ling" in her "coodie-cat." S.M. also stated that "milk" came out of defendant's "ding-a-ling," and that the "milk" landed on her stomach. Defendant warned S.M. not to tell anyone what had happened, and he gave her some candy. S.M. indicated that defendant had done this to her several times.

W.M. told Detective Solomon that defendant sucked his "ding-a-ling," and defendant tried to make W.M. suck defendant's "ding-a-ling." W.M. explained that defendant put his "ding-a-ling" in W.M.'s "butt." W.M. said "white stuff" came out of defendant's "ding-a-ling," and that this activity occurred every weekend.

The children's mother took W.M. and S.M. to the emergency room at Highsmith-Rainey Memorial Hospital on 29 January 1991. The emergency room nurse, Ms. Aline Taylor, testified that W.M. told her defendant would suck W.M.'s penis and had also put his penis in W.M.'s mouth and bottom. S.M. told the nurse that defendant hurt her by putting his "ding-a-ling" in her "cooter" and her "fanny." Dr. James Zinser, the emergency room doctor, testified that he examined both children to determine whether an emergency situation was present. He determined no emergency was present and made no physical findings of abuse.

Both W.M. and S.M. testified at trial. The testimony related by the children was consistent with what they had conveyed to Ms. Sena, Detective Solomon, and the hospital personnel. A third child, F.M., age seven, testified that defendant used to baby-sit her, and would touch her "private parts" with "his hand and his private part." Ms. Sena corroborated F.M.'s testimony. F.M. told Ms. Sena that defendant had been giving her candy to let him touch her. F.M. had to be hospitalized in Cumberland Mental Hospital, and has been placed in a behaviorally and emotionally handicapped class.

On 22 February 1991, the children's mother took W.M. and S.M. to the clinic of the Child Medical Evaluation Program at the University of North Carolina Children's Hospital in Chapel Hill. There, a mental health consultant for the program, Ms. Janet Hadler, spoke to both children individually prior to a physical examination. Ms. Hadler made a videotape of each interview which was played for the jury. Dr. Desmond Runyan, a pediatrician and the director of the program, examined both children. He discovered physical evidence of sexual abuse in both children.

Defendant presented evidence consisting of the testimony of F.M.'s brother and two psychologists, Dr. Brad Fisher and Dr. John Warren, III. The psychologists testified regarding the suggestibility of young children. Defendant did not testify.

[1] Defendant's first contention on appeal is that the trial court erred in its instructions to the jury concerning the nature of testimony recounted by several of the State's witnesses. During testimony given by adult witnesses who had spoken with the children, defense counsel objected on hearsay grounds. Counsel asked that the admission of such testimony be limited to corroboration of the child witnesses. As the adult witnesses related versions of what they had been told by the children, the trial court gave the following instruction:

> Members of the jury, the information that this witness is getting ready to relate to you is being offered by the state to corroborate the testimony of a witness who has already testified. If you find that it does corroborate that witness's testimony, then you may consider it as you would consider any other believable evidence.

Defendant argues "[b]ecause the hearsay testimony was admissible, if at all, merely to corroborate the children's testimony, the trial court erred in not properly limiting the testimony." We discern no problem with the instruction given by the trial court. The trial court gave the instruction each time the defendant requested that the testimony be admitted solely for corroborative purposes. The instruction properly informs the jury that the testimony was to be considered only for purposes of corroboration. The defendant's assignment of error is overruled.

[2] Defendant next challenges the trial court's admission of testimony by State's witnesses Ms. Aline Taylor and Ms. Janet Hadler.

Defendant did not assert an assignment of error addressing the testimony of Ms. Taylor. According to N.C.R. App. P. 10(a), our review is limited to a consideration of those issues set out in the record on appeal. *See also, Koufman v. Koufman,* 330 N.C. 93, 408 S.E.2d 729 (1991). Defendant therefore has waived review of the issue with respect to Ms. Taylor, and we review the issue addressing only the testimony of Ms. Hadler.

Defendant contends that the testimony of Ms. Hadler, a mental health consultant who conducts child medical evaluations at the UNC Children's Hospital, should not have been admitted as substantive evidence pursuant to the hearsay exception embodied in N.C. Gen. Stat. § 8C-1, Rule 803(4). Testimony admitted under the hearsay exception for statements for the purpose of medical treatment or diagnosis is firmly rooted and presumed reliable. N.C. Gen. Stat. § 8C-1, Rule 803(4); *State v. Aguallo,* 318 N.C. 590, 350 S.E.2d 76 (1986). Defendant argues the presumption of reliability was overcome in this case. Specifically, defendant claims that Ms. Hadler's testimony was unreliable because "[t]here was no medical or psychological purpose for the interviews. Rather, they were purely designed to gather information against defendant." Defendant additionally contends that the interviews conducted by Ms. Hadler were inherently suggestive. We disagree.

Under Rule 803(4), the statements made for the purpose of medical diagnosis or treatment need not be made to medical personnel in order to be admissible. In *State v. Smith,* 315 N.C. 76, 85, 337 S.E.2d 833, 840 (1985), our Supreme Court held that statements made by the child victim to her grandmother were properly admitted as substantive evidence pursuant to Rule 803(4). In a case with facts similar to the case at bar, *State v. Jones,* 89 N.C. App. 584, 367 S.E.2d 139 (1988), this Court allowed the testimony of a social worker as coordinator for the Duke Child Protection Team to be admitted as substantive evidence under Rule 803(4). In *Jones,* the social worker conducted a two-part evaluation of the child victim consisting of a disclosure interview and a physical examination. The disclosure interview was necessary "to elicit information about the molestation for the purpose of aiding the medical examination and diagnosis of the victim's condition." *Id.* at 592, 367 S.E.2d at 145. To determine whether the examination was conducted for the purpose of treatment or diagnosis, rather than for the purpose of gathering evidence, this Court in *Jones* urged trial courts to consider the following:

(1) whether the examination was requested by persons involved in the prosecution of the case; (2) the proximity of the examination to the victim's initial diagnosis; (3) whether the victim received a diagnosis or treatment as a result of the examination; and (4) the proximity of the examination to the trial date.

*Id.* at 591, 367 S.E.2d at 144 (citations omitted).

Our application of the *Jones* test to the facts in the present case leads us to the conclusion that Ms. Hadler's statements were properly admitted pursuant to Rule 803(4). The children's mother took them to the UNC Children's Hospital at the suggestion of the juvenile detective of the Cumberland County Sheriff's Department. The juvenile detective explained that the program coordinators would be able to conduct a more thorough examination of the children than that which was performed at Highsmith-Rainey Memorial Hospital. The examination occurred on 22 February 1991, within two months of the last assault and less than four weeks from the date of the victims' disclosures in January. Dr. Runyan diagnosed both children as being victims of sexual trauma. The date of the examinations took place over a year prior to trial. The interviews were conducted to assist Dr. Runyan in examining the children. We find that under the test outlined in *Jones*, the testimony of Ms. Hadler concerning the statements made to her by the children was reliable, and therefore properly admitted by the trial court as substantive evidence pursuant to Rule 803(4).

[3] In his next argument, defendant questions the relevancy of testimony given by Ms. Hadler and Dr. Runyan regarding the nature of child sexual abuse and the psychological symptoms of being molested. Defendant contends Ms. Hadler's testimony concerning general characteristics of sexually abused children, behavioral problems in those who have been abused, and children's disclosure patterns was not helpful to the jury and improperly admitted. With respect to Dr. Runyan's testimony, defendant contends his opinion that the children had been "molested" was erroneously admitted. To support his argument, defendant relies on *State v. Hall*, 330 N.C. 808, 412 S.E.2d 883 (1992); such reliance is misplaced.

In *Hall*, our Supreme Court addressed the admissibility of evidence that a victim suffered from post-traumatic stress syndrome and a conversion disorder. The Court held that where an

expert testifies that a victim is suffering from conversion reaction, post-traumatic stress disorder or rape trauma syndrome, the testimony must be limited to corroboration of the victim only and not for substantive purposes. *Id.* at 822-23, 412 S.E.2d at 890-91. In the case below, Ms. Hadler's testimony served to explain basic characteristics of sexually abused children, reasons for children failing to report abuse to parents, and various events leading to disclosure. No testimony as to an abuse "profile" or "syndrome" was given, so the analysis set forth in *Hall* is inapplicable.

As in *State v. Kennedy*, 320 N.C. 20, 32, 357 S.E.2d 359, 366 (1987), the testimony given in this case describing general symptoms and characteristics of sexually abused children to explain the victims' behavior is not error, since "[t]he testimony . . . if believed, could help the jury understand the behavior patterns of sexually abused children and assist it in assessing the credibility of the victim." The testimony was therefore relevant to rebut the defense that the children fabricated the abuse. Furthermore, the testimony was not offered for the substantive purpose of showing a sexual assault had occurred. Prior to Ms. Hadler's testimony, the trial court gave the following limiting instruction:

> THE COURT: All right. Members of the jury, the testimony that you are about to receive and any opinions of this expert witness are admitted for the sole purpose of corroborating the testimony of the alleged victims. It is not being admitted to prove that a rape or a sexual offense, in fact, occurred and you may not consider it for that purpose.

Consequently, we find no error with respect to the admission of Ms. Hadler's testimony.

[4] With respect to Dr. Runyan's testimony, defendant assigns as error the qualification of the pediatrician as an expert in "the diagnosis of child sexual abuse." Defendant also contends Dr. Runyan's testimony was not helpful to the jury. Specifically, defendant contends it was error for the trial court to allow Dr. Runyan to testify that the female victim was "molested." A review of the transcript indicates that Dr. Runyan was accepted as an expert in the area of pediatrics and diagnosis of child sexual abuse without objection. Dr. Runyan's medical opinion, based on the medical history and a physical examination of S.M. was that "sexual molestation has occurred." He similarly concluded that "sexual abuse has occurred," as to W.M. We find that Dr. Runyan's testimony and

conclusions were helpful to the jury and not in violation of the rules of evidence. Pursuant to N.C.R. Evid. 702, an expert may testify as to an opinion where scientific, technical, or other specialized knowledge will assist the jury in understanding the evidence. An expert may testify as to the facts or data forming the basis of the opinion under N.C.R. Evid. 703. And, an expert opinion as to an ultimate issue is admissible under N.C.R. Evid. 704. We find no error with respect to the admission of Dr. Runyan's testimony into evidence.

Defendant next maintains that his right to a unanimous jury verdict was violated because the trial court instructed the jury on sexual offense, indecent liberties, and crime against nature without requiring the jury to specify which act or acts defendant committed. This issue has been specifically decided in *State v. Hartness*, 326 N.C. 561, 391 S.E.2d 177 (1990), which held such an instruction to be no error.

Next, defendant claims the trial court erred in denying his motion for the production of the victims' confidential records from the Cumberland County Mental Health Center. At a pretrial hearing, the trial court conducted an *in camera* review of the evaluations of S.M. and W.M., concluded the records contained no exculpatory value to defendant, and sealed the records for appellate review. Defendant has asked us to review the sealed records and to determine whether any of the documents would have been materially helpful to defendant in preparing his defense. We have reviewed the records thoroughly and find no exculpatory information. The trial court therefore did not err in failing to disclose the confidential records to the defendant.

[5] Finally, defendant contends the trial court erred in referring to the prosecuting witnesses as "victims" in its jury charge. Defendant failed to object at trial to the characterization of the children as "victims," and has technically waived review of this assignment of error. N.C.R. App. P. 10(b)(2). Our standard of review is therefore a plain error standard as outlined in *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983). "In deciding whether a defect in the jury instruction constitutes 'plain error', the appellate court must examine the entire record and determine if the instructional error had a probable impact on the jury's finding of guilt." *Id.* at 661, 300 S.E.2d at 378-79 (citing *United States v. Jackson*, 569 F.2d 1003 (7th Cir.), *cert. denied*, 437 U.S. 907, 57 L.Ed.2d 1137

(1978)). We have reviewed the record and find no plain error. The word "victim" is included in the pattern jury instructions promulgated by the North Carolina Conference of Superior Court Judges and is used regularly to instruct on the charges of first-degree rape and first-degree sexual offense. Defendant cites no authority supporting his contention that such instructions violate the defendant's presumption of innocence. Moreover, defendant can point to no prejudice suffered due to the use of the pattern instructions, since he was neither convicted of first-degree rape or first-degree sexual offense, but found guilty of indecent liberties and crime against nature. The jury charge given for the latter charges does not contain the word "victim." We thus conclude that as to defendant's trial there was

No error.

Chief Judge ARNOLD and Judge MARTIN concur.