STATE OF NORTH CAROLINA v. PATRICK S. FIGURED

No. 9315SC539

(Filed 16 August 1994)

## 1. Rape and Allied Offenses § 105 (NCI4th)— first-degree sex offense—sufficiency of evidence

Evidence was sufficient to be submitted to the jury in a prosecution for first-degree sex offense against three children where it tended to show that defendant had access to the children and opportunity to commit the crimes; the State presented overwhelming medical evidence which was uncontroverted by defendant; and the three victims identified defendant as the perpetrator in direct testimony and in consistent statements made independently to doctors and psychologists, as well as to their parents.

**Am Jur 2d, Rape §§ 88 et seq.**

## 2. Evidence and Witnesses § 2334 (NCI4th)— first-degree sex offense—opinion that children abused admissible— opinion that defendant was abuser inadmissible—admission harmless error

In a prosecution for first-degree sex offense against three children, the opinion of an expert in psychology and child sex abuse that the children were sexually abused was clearly admissible, but the expert's opinion that the children were sexually abused by defendant was not admissible, since the latter opinion did not relate to a diagnosis derived from the expert's examina-

1

tion of the prosecuting witnesses in the course of treatment; however, there was no reasonable possibility that the witness's inadmissible testimony affected the jury's verdict because of the State's evidence of opportunity, the children's testimony identifying defendant as the perpetrator, and the corroborating testimony of other witnesses.

**Am Jur 2d, Expert and Opinion Evidence §§ 47 et seq.**

3. **Constitutional Law § 327 (NCI4th)— no denial of speedy trial**

    Defendant was not denied his Sixth Amendment right to a speedy trial by the delay between his arrest in November 1988 and his trial in September 1992, and the trial judge's findings setting forth in significant detail the procedural history of the case were adequate to support its conclusion that defendant was not prejudiced by the delay.

    **Am Jur 2d, Criminal Law §§ 652 et seq., 849 et seq.**

    **Accused's right to speedy trial under Federal Constitution—Supreme Court cases. 71 L. Ed. 2d 983.**

4. **Evidence and Witnesses § 961 (NCI4th)— victim's statements to psychologists and social worker—statements made for diagnosis or treatment—admissibility**

    The trial court in a first-degree sex offense case did not err in admitting testimony of a social worker and two psychologists concerning statements made by the victims since those statements were made for the purposes of medical diagnosis or treatment and hence were admissible under N.C.G.S. § 8C-1, Rule 803(4).

    **Am Jur 2d, Evidence §§ 867, 868.**

    **Admissibility of statements made for purposes of medical diagnosis or treatment as hearsay exception under Rule 803(4) of the Federal Rules of Evidence. 55 ALR Fed. 689.**

5. **Evidence and Witnesses § 1209 (NCI4th)— admission—instruction proper**

    The trial court's instruction in a prosecution for first-degree sex offenses against three children that there was some evidence "which tends to show that the defendant may have admitted a fact

**STATE v. FIGURED**

[116 N.C. App. 1 (1994)]

relating to the crime charged in this case" was supported by evidence that defendant said "Who, Brooks?" when informed that he was being arrested for statutory rape. Furthermore, the instruction did not constitute an expression of opinion on the evidence.

**Am Jur 2d, Trial §§ 1204 et seq.**

Appeal by defendant from judgment entered 13 October 1992 by Judge Darius B. Herring, Jr., in Chatham County Superior Court. Heard in the Court of Appeals on 1 March 1994.

*Attorney General Michael F. Easley, by Assistant Attorney General Ellen B. Scouten, for the State.*

*Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellate Defender Mark D. Montgomery, for defendant appellant.*

COZORT, Judge.

The most significant issue presented by this appeal is whether the trial court erred by admitting testimony from a State's witness that two children "were sexually abused by Pat Figured," the defendant. We hold the admission of that statement was error; however, we find the error was not prejudicial, given the other evidence against the defendant. The procedural history and summary of the evidence follow.

The defendant was arrested on 15 November 1988 and indicted by the Grand Jury of Johnston County on 9 January 1989 for three counts of first degree sex offense involving three children. The indictment alleged that the events occurred sometime in July of 1988. On 28 March 1989, the defendant entered an Alford plea of guilty to all three charges. The State agreed to dismiss the charges against a codefendant, Sonja Hill, who was defendant's girlfriend. Defendant was sentenced to life imprisonment, and the State dismissed the charges against Sonja Hill.

In July of 1990 the outgoing District Attorney of Johnston County re-indicted Sonja Hill on the same charges. On 15 April 1991 defendant filed a motion for appropriate relief asking that his plea of guilty be set aside on the ground that the district attorney had violated the terms of its plea agreement by re-indicting Sonja Hill. The motion was granted on 26 August 1991. Since the newly elected District Attorney of Johnston County had been counsel to Sonja Hill prior to assuming

office, the case was assigned to two assistant district attorneys from another prosecutorial district, and the venue was changed from Johnston County to Chatham County.

On 9 March 1992 the Grand Jury of Chatham County re-indicted defendant for three counts of first degree sex offense involving Child A, aged 2½, Child B, aged 5½, and Child C, aged 2½, occurring between June and October 1988. On 24 March 1992, defendant filed a motion to dismiss for denial of his right to a speedy trial and due process of law. Judge Herring conducted a hearing on this motion on 28 September 1992, the day of trial, and entered an order, with findings of fact and conclusions of law, holding that defendant's constitutional rights were not violated. All three cases were consolidated for trial.

At trial, the State presented evidence that the defendant frequently visited at Miss Polly Byrd's unlicensed home day care, where the three children stayed. The defendant frequently visited Ms. Byrd's home in order to visit Ms. Byrd's daughter, Sonja Hill, who was living there. Defendant stayed at the day-care home frequently until he got a job and thereafter was able to return to the home during the daytime while travelling on company business. Witnesses testified that defendant's car, a distinctive white Corvette, was frequently seen at Ms. Byrd's house during the daytime.

Each child testified that defendant inserted a screwdriver in his or her anus. Two of the children testified that the defendant made a dog urinate and forced the children to drink it.

Dr. Karen Sue St. Claire testified that Child A was referred to her for medical evaluation concerning possible sex abuse. Dr. St. Claire examined Child A on 2 November 1988. She examined Child A's anus and discovered hyperpigmentation and redness around the anus and noted that both sets of anal muscles opened rapidly to a width of 1.7 centimeters. She testified that the hyperpigmentation could be caused by trauma or by infection or by irritation. She further testified that the rapid opening of the anus indicated that something had been repeatedly inserted into the anus from the outside. She indicated that this could have been a screwdriver or a penis. Dr. St. Claire also examined Child B. She testified to having found similar abnormalities in her examination of Child B's rectal area.

Marci Herman-Giddens, a physician's assistant and professor of pediatrics at Duke University, examined Child C on 3 November 1988. Ms. Herman-Giddens testified that Child C's anal muscle would open

and close intermittently and that there was an area of skin that was a different color from normal, and smooth, indicating an area that had been hurt and was in the process of healing. In her opinion this was some type of trauma caused by an object with sufficient force to disrupt the skin. The object could have been a screwdriver.

Nancy Berson, a social worker and coordinator of the Duke Child Protection Team, separately interviewed Child A, Child B and Child C. She testified that in her initial interview with Child A, Child A identified the defendant as the man who hurt her. She further testified that she interviewed Child A on several subsequent occasions to determine if the child's story was consistent and to determine whether Child A's father could have been the perpetrator. She testified that Child B also said that defendant had hurt him, Child A, and Child C with a screwdriver and pointed to his anal area. She further testified that Child B told her about various other acts of sexual abuse of the three children by defendant. Ms. Berson testified that Child C told her in her interview with him in November 1988 that he was not hurt and did not want to talk to her. When she interviewed Child C again the next day he did not say anything about defendant but began stuttering. In a subsequent 6 November interview, Child C began to talk about a "mean man" who hurt him with a screwdriver and who also hurt Child A and Child B. Ms. Berson referred all three children to Dr. Boat and Dr. Everson for treatment.

Dr. Barbara Boat, a child psychologist, treated Child C to help him learn to deal with the trauma he had experienced. Dr. Boat testified that Child C drew a picture and stated during therapy that "Pat hurt my hiney with a screwdriver." She also testified that Child C told her that Pat tore his pants with the screwdriver and that Granny Polly sewed them up.

Dr. Mark Everson, a clinical associate professor of psychology in the Department of Psychiatry at the University of North Carolina, saw Child A and Child B for treatment beginning in November 1988. He treated them in therapy up until trial to reduce their fears and feelings of guilt surrounding the abuse. Dr. Everson testified that in November 1988 Child B told him that defendant inserted the sharp end of a screwdriver into his bottom and into Child C's bottom, inserted his penis into the bottoms of all three children, made Child B and Child C lick white powder off defendant's penis, threatened them to keep them from telling, and made them drink dog urine. Dr. Everson further testified that Child A told him that she saw white stuff come out

of defendant's penis when he stuck it in Child C's bottom and that Child A and Child B told him that defendant threatened to kill their parents if they told on him. Over defense counsel's objection, Dr. Everson testified that, in his opinion, Child A and Child B were sexually abused by defendant.

Defendant made a motion to dismiss for insufficiency of the evidence, which the trial court denied. The jury found defendant guilty on all three counts. From sentences imposing three consecutive life terms, defendant appeals.

Defendant raises five issues on appeal: (1) whether the trial court erred in denying defendant's motion to dismiss for insufficiency of the evidence, (2) whether the trial court erred in allowing Dr. Everson to testify that defendant molested the prosecuting witnesses, (3) whether the trial court properly denied defendant's speedy trial motion, (4) whether the trial court properly admitted testimony of medical and mental health experts containing hearsay statements of the child victims, and (5) whether the trial court erred in instructing the jury on an admission by defendant.

[1] Defendant contends the three convictions in this case rest on evidence which is not substantial. He argues that even though there is some evidence of each element, this evidence cannot be deemed substantial because the children had been subjected to repeated, suggestive interviewing for over four years, the physical evidence was equivocal, and most of the State's case was based on hearsay from adults who were in no better position than the jury to determine the truth.

In reviewing a trial court's denial of a motion to dismiss this Court must consider the evidence in the light most favorable to the State, giving the State the benefit of all permissible favorable inferences. *State v. Earnhardt*, 307 N.C. 62, 296 S.E.2d 649 (1982). To survive a motion to dismiss for insufficiency of the evidence, the State must present substantial evidence of each element of the offenses. *State v. Allred*, 279 N.C. 398, 404, 183 S.E.2d 553, 557 (1971). To be guilty of a first degree sexual offense under N.C. Gen. Stat. § 14-27.4(a)(1), the State must show that defendant engaged in a sexual act "[w]ith a victim who is a child under the age of 13 years and the defendant is at least 12 years old and is at least four years older than the victim; . . ." N.C. Gen. Stat. § 14-27.4(a)(1) (1993).

Reviewing the evidence in the light most favorable to the State, we find there was substantial evidence as to each element of the three

offenses. The State's evidence showed that defendant had access to the children and opportunity to commit the crimes. The State presented overwhelming medical evidence which was uncontroverted by defendant. Moreover, the State's case was not based completely on hearsay. The three victims identified defendant as the perpetrator in direct testimony and in consistent statements made independently to doctors and psychologists, as well as to their parents.

[2] Defendant next argues that it was reversible error for the trial court to allow Dr. Everson, who was accepted as an expert in psychology and child sex abuse and who treated Child A and Child B, to testify that in his opinion "[Child A and Child B] were sexually abused by Pat Figured."

Defendant first argues that it is error to allow an expert witness to testify to his or her conclusion that the child has been abused. We disagree. This Court has upheld the admission of expert testimony that, in his or her opinion, the prosecuting witness was sexually abused. *State v. Richardson*, 112 N.C. App. 58, 434 S.E.2d 657 (1993), *disc. review denied*, 335 N.C. 563, 441 S.E.2d 132 (1994); *State v. Reeder*, 105 N.C. App. 343, 350, 413 S.E.2d 580, 584 (1992); *State v. Speller*, 102 N.C. App. 697, 702, 404 S.E.2d 15, 18, *disc. review denied*, 329 N.C. 503, 407 S.E.2d 548 (1991); *State v. Bailey*, 89 N.C. App. 212, 219, 365 S.E.2d 651, 656 (1988).

Defendant further argues that such testimony is inadmissible because it merely attests to the truthfulness of the child witness. "Our appellate courts have consistently held that the testimony of an expert to the effect that a prosecuting witness is believable, credible, or telling the truth is inadmissible evidence." *Bailey*, 89 N.C. App. at 219, 365 S.E.2d at 655 (citations omitted). In *Bailey*, this Court upheld testimony by a social worker and a pediatrician that in their opinion the child had been sexually abused, reasoning that such testimony was not improper testimony as to the credibility of the victim's testimony or to the defendant's guilt or innocence, but constituted proper expert testimony based on each witness's examination of the victim and expert knowledge concerning the abuse of children in general. *Bailey*, 89 N.C. App. at 219, 365 S.E.2d at 656 (1988). *See also Reeder*, 105 N.C. App. 343, 349-50, 413 S.E.2d 580, 583; *Richardson*, 112 N.C. App. 58, 434 S.E.2d 657. In distinguishing such testimony from those cases in which the disputed testimony concerns the credibility of a witness's accusation of a defendant, the *Bailey* court noted that the opinion "relates to a diagnosis based on the expert's examination of

the witness." *Bailey*, 89 N.C. App. at 219, 365 S.E.2d at 655 (1988) (citations omitted). Dr. Everson's testimony that the children had been sexually abused related to a diagnosis derived from his expert examination of Child A and Child B in the course of treatment and thus did not constitute improper testimony as to the credibility of the child's testimony. Defendant's reliance on *State v. Trent*, 320 N.C. 610, 359 S.E.2d 463 (1987), and *State v. Parker*, 111 N.C. App. 359, 432 S.E.2d 705 (1993), to support his argument is misplaced. Those cases did not hold that an expert's opinion that a child had been sexually abused was inadmissible because it merely attests to the truthfulness of the child witness. Rather, in those cases the Court found the opinions inadmissible because the State failed to lay sufficient foundation for the opinions.

Defendant further argues that Dr. Everson's testimony that in his opinion the children were sexually abused *by this defendant* was not helpful to the jury and that the testimony was essentially expert testimony on the guilt of the defendant. We agree.

Dr. Everson's opinion was an expression of opinion as to defendant's guilt and thus violated Rule 702 of the North Carolina Rules of Evidence. In *State v. Faircloth*, 99 N.C. App. 685, 692, 394 S.E.2d 198, 203 (1990), we held that an expert's opinion testimony that " 'it would be improbable that these hairs would have originated from another individual' " "addressed the credibility of other witnesses and was an expression of opinion as to defendant's guilt and thus violated Rules 405(a), 608(a) and 702 of the North Carolina Rules of Evidence." Rule 702 of the North Carolina Rules of Evidence allows a witness qualified as an expert to testify in the form of an opinion where he has "scientific, technical or other specialized knowledge [which] will assist the trier of fact to understand the evidence or to determine a fact in issue . . . ." N.C. Gen. Stat. § 8C-1, Rule 702 (1992). The State argues that Dr. Everson's opinion was helpful to the jury because Dr. Everson was in a better position than the jury to evaluate whether the defendant was the perpetrator. The State points out that Dr. Everson was professionally obligated to determine the identity of the abuser in order to prevent further abuse and had brought the children's father in for testing and observation and determined that the father was not the abuser. We nonetheless find that Dr. Everson was in no better position than the jury to determine whether defendant was the perpetrator and hence the admission of his testimony violated Rule 702. Dr. Everson's opinion was based on the same information that had been conveyed to the jury through the testimony of the social

worker and mental health professionals who treated the children and the testimony of the children themselves.

While Dr. Everson's opinion that the children were sexually abused was clearly admissible under prior decisions of this Court, his opinion that the children were sexually abused *by defendant* was not. Dr. Everson's opinion that the children were sexually abused *by defendant* did not relate to a diagnosis derived from his expert examination of the prosecuting witnesses in the course of treatment. It thus constituted improper opinion testimony as to the credibility of the victims' testimony. *Bailey*, 89 N.C. App. at 219, 365 S.E.2d at 655; *Reeder*, 105 N.C. App. at 349-50, 413 S.E.2d at 583; *Richardson*, 112 N.C. App. 58, 434 S.E.2d 657. This testimony was in violation of Rules 405(a) and 608(a) of the North Carolina Rules of Evidence. *State v. Faircloth*, 99 N.C. App. 685, 692, 394 S.E.2d 198, 203 (1990).

We next consider whether the admission of Dr. Everson's opinion constitutes reversible error. Defendant contends that had Dr. Everson's opinion that the children were sexually abused by defendant been excluded, there is a reasonable possibility that the jury would have found him not guilty. We disagree. Having considered the remaining evidence which was properly before the jury, we find there was no reasonable possibility that the admission of the improper testimony affected the jury's decision.

The State presented strong evidence that defendant was the perpetrator. Each child testified defendant inserted a screwdriver into his or her anus. Two of the children testified that the defendant made a dog urinate and forced them to drink it. The children's testimony was corroborated by Ms. Berson, Dr. Boat, and Dr. Everson. They testified to statements the children made to them in the course of diagnosis and treatment which described sexual abuse by the defendant. Dr. Everson testified that, in his opinion, the children had been sexually abused.

In addition, the State presented evidence that defendant had an opportunity to sexually abuse the children. Brooks Hill, Sonja Hill's daughter, testified that during June through October 1988 she and her mother lived with Polly Byrd. Brooks further testified that during this period defendant would occasionally eat lunch at Polly's. Jewel Blackmon, the mother of two of the children, testified that she saw defendant at Polly's six or seven times when she went to pick her children up in the afternoon. Defendant testified that he was the only person who drove his white Corvette. The State presented various witnesses who saw defendant's Corvette parked in Polly's driveway

during daytime hours. The State also presented evidence that Polly had a large yard that she mowed herself. The yard took three hours to mow. Child B testified that Polly "mowed the grass when we got hurt."

Defendant tried to establish that he had no access to the children through his own testimony and the testimony of various other witnesses. Defendant presented witnesses who testified that they did not see defendant at Polly Byrd's. Ann Lee, Polly Byrd's daughter, testified that she would drop in at Polly's and that she never saw defendant there when the children were there. Two of Sonja Hill's sisters testified that they often dropped in on Polly unannounced. Neither remembered having seen defendant there during the week. Linwood and Betsy Byrd testified that they never saw defendant at Polly's. Polly Byrd testified that defendant never had occasion to be alone with the children at the house. Brooks Hill testified that she had seen defendant with the other children on occasion, but never alone with them.

Defendant testified that he was out of work from January 1988 to 18 July 1988, when he was hired by Teletek in Raleigh. He testified that he lived at his mother's house in Concord while searching for a job. He began work on 24 July 1988 at Teletek in Raleigh. He testified that he worked regular hours during July through October, 1988 and that the only times during that period that he went to Smithfield were two or three times in the evenings. It took thirty-five minutes to an hour to drive from Teletek to Polly's residence. Defendant further testified that he and Sonja were not seeing each other at all during the first half of September. Tom Smart testified that defendant worked with him at Teletek, Inc., in Raleigh and that defendant worked from about eight to five, five days a week. Mr. Smart acknowledged that no one kept up with defendant's whereabouts during that time and that everybody in the company frequently had business out of the office. Defendant testified that on two business trips he stopped by Polly's during the daytime hours when the children were there. Defendant's secretary, Deborah Beasley, testified that defendant usually came in early and worked late. She also testified that defendant was rarely away during the day, although he sometimes went out for lunch.

We find that the State established that defendant had sufficient opportunity to sexually abuse the children. Defendant did not present an airtight alibi for his whereabouts between June and October, 1988. Because of the State's evidence of opportunity, the children's testi-

mony identifying defendant as perpetrator, and the corroborating testimony of Ms. Berson, Dr. Boat, and Dr. Everson, we find that there is no reasonable possibility that Dr. Everson's inadmissible testimony affected the jury's verdict.

[3] We next consider whether the trial court properly denied defendant's speedy trial motion. The Sixth Amendment to the Constitution of the United States provides, in pertinent part, that "[i]n all criminal prosecutions the accused shall enjoy the right to a speedy . . . trial." U.S. Const. amend. VI. "To determine whether a defendant's right to a speedy trial has been denied, four factors must be examined: the length of the delay, reasons for the delay, defendant's assertion of the right, and prejudice suffered by the defendant." *State v. Joyce*, 104 N.C. App. 558, 568, 410 S.E.2d 516, 522 (1991) (citing *Barker v. Wingo*, 407 U.S. 514, 530, 33 L.Ed.2d 101, 117 (1972)), *cert. denied*, 331 N.C. 120, 414 S.E.2d 764 (1992). The factors are considered together in determining whether defendant's Sixth Amendment rights have been violated. *State v. McClain*, 112 N.C. App. 208, 213, 435 S.E.2d 371, 373 (1993) (citing *State v. Joyce*, 104 N.C. App. 558, 568, 410 S.E.2d 516, 522 (1991)).

Defendant contends that the trial court did not apply the test set out by the Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 530, 33 L.Ed.2d 101, 117 (1972), and therefore abused its discretion. The judge's order sets forth in significant detail the procedural history of the case. While it would have been better for the trial court to specifically address the four factors from *Joyce*, we find no error in the judge's findings of fact and conclusion of law that defendant was not prejudiced by the delay.

[4] Defendant next argues that portions of the testimony of witnesses Dr. Everson, Ms. Berson and Dr. Boat containing statements of the children should have been stricken as inadmissible hearsay.

Ms. Berson, a social worker and coordinator of the Duke Child Protection Team, was asked to interview Child A after a doctor at Duke gave Child A a physical examination and found Child A's anal area abnormal. Ms. Berson interviewed Child A to determine what had happened to her and conducted subsequent interviews to determine whether her story was consistent and whether Child A's father could have been the perpetrator. Child A told Ms. Berson that a man hurt her "lulu" a lot of times with a screwdriver and later named the defendant as the perpetrator. Ms. Berson asked that Child B be brought in for an evaluation. During this evaluation, Child B made

statements describing defendant's sexual abuse of Child A, Child B, and Child C. Ms. Berson later interviewed Child C, who made statements about a "mean man" who hurt him on his knee and on his genitals with a screwdriver.

Dr. Everson treated Child A and Child B in therapy between November, 1988 until the time of trial to reduce their fears and feelings of guilt surrounding the abuse. In the course of therapy, Child A and Child B made statements to Dr. Everson describing defendant's sexual abuse of them.

Dr. Boat, a child psychologist, treated Child C to help him learn to deal with the trauma he experienced. Dr. Boat testified to the course of her sessions with Child C from February 1989 through November 1991. Dr. Boat testified that Child C drew a picture and stated that "Pat hurt my hiney with a screwdriver" and that Pat tore his pants with the screwdriver.

Rule 803(4) provides an exception to the hearsay rule for "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." N.C. Gen. Stat. § 8C-1, Rule 803(4) (1992). This Court and the Supreme Court have allowed this type of evidence to come in as substantive evidence under Rule 803(4). In *State v. Bullock*, 320 N.C. 780, 783, 360 S.E.2d 689, 690 (1987), the Supreme Court allowed testimony of a mental health professional "as to the statements and demonstrations by the children indicating that they had been sexually abused and that the perpetrator was . . . the defendant, . . ." finding them admissible under Rule 803(4). In *State v. Richardson*, 112 N.C. App. 58, 434 S.E.2d 657, we held statements to a social worker assisting a pediatrician were admissible as substantive evidence under Rule 803(4). In *State v. Jones*, 89 N.C. App. 584, 593, 367 S.E.2d 139, 145 (1988), the testimony of Nancy Berson, a social worker and coordinator and child evaluator for the Duke Child Protection Team, was properly admitted as substantive evidence under Rule 803(4). We find that the children's statements to Ms. Berson, Dr. Everson, and Dr. Boat, like those in *Bullock*, *Richardson* and *Jones*, were made for the purposes of medical diagnosis or treatment and hence were admissible under Rule 803(4).

Defendant also argues that the testimony of Ms. Berson, Dr. Everson, and Dr. Boat should have been excluded or at least re-

stricted by the trial court to show some psychological characteristic of the complaining witnesses placed at issue by the defense. Defendant cites *State v. Hall*, 330 N.C. 808, 412 S.E.2d 883 (1992), to support his argument. In *Hall*, the Supreme Court held that evidence of post-traumatic stress syndrome suffered by victims of sexual abuse may be admitted for certain corroborative purposes. *Hall*, 330 N.C. at 821, 412 S.E.2d at 890. The Court noted that "[a]lthough we find that evidence of post-traumatic stress syndrome does not alone prove that sexual abuse has in fact occurred, we believe that this should not preclude its admission at trial where the relevance to certain disputed issues has been shown by the prosecution." *Id.* Since there was no evidence of post-traumatic syndrome in this case, the *Hall* decision is clearly inapplicable. We thus overrule this assignment of error.

**[5]** Finally, defendant argues that the trial court erred in instructing the jury on an admission. During trial, the prosecutor asked defendant on cross-examination what he said to Detective Eatman as he was being arrested for statutory rape. In response to the prosecutor's question whether he said "Who, Brooks?" defendant answered, "No, that was before the arrest, sir." Brooks was Sonja Hill's daughter. On rebuttal the State called Detective Eatman, who testified that, when the defendant was arrested and informed that he had been accused of sexual conduct with a minor, he responded, "Who, Brooks?" Defense counsel objected to the admission of this testimony. After the judge overruled his objection, defense counsel stated that the defendant had already testified to this. The judge asked counsel to approach the bench and then repeated that the objection was overruled.

The trial court stated at the charge conference that he would give the instruction on admissions, and defendant made no objection. The trial court instructed the jury as follows:

> There is some evidence which tends to show that the defendant may have admitted a fact relating to the crime charged in this case. If you find that the defendant made any admission, then you should consider all of the circumstances under which it was made in determining whether or not it was truthful and in determining what meaning and what weight you will give to it.

At the conclusion of the charge defendant stated an objection "for the record" to the instruction on admission, without giving any reason or making any argument.

Defendant argues that the detective's testimony was improper impeachment on a collateral matter through extrinsic evidence. Since defendant failed to specify the grounds for his objection to the detective's testimony, and it is not apparent from the context what specific grounds defendant sought to have the court exclude the detective's testimony, other than the fact that defendant had already testified to the issue, defendant has not preserved this error for review. N.C.R. App. P. 10(b).

Defendant further argues that the admission instruction was not supported by the evidence. We disagree. Defendant's statement "Who, Brooks?" in response to being informed that he was being arrested for statutory rape could be considered an admission. "A response which is not the equivalent of a denial may indicate acquiescence and be considered by the jury for what it is worth." *State v. Thompson*, 332 N.C. 204, 219, 420 S.E.2d 395, 403 (1992). Finally, defendant argues that the judge's instructions set out only the State's contentions and thus constituted an improper expression of judicial opinion in violation of N.C. Gen. Stat. § 15A-1232. We disagree. N.C. Gen. Stat. § 15A-1232 (1988) reads as follows: "In instructing the jury, the judge shall not express an opinion as to whether or not a fact has been proved and shall not be required to state, summarize or recapitulate the evidence, or to explain the application of the law to the evidence." This statute does not prohibit the judge from setting out the parties' contentions. However, when the judge does so, he must give equal stress to the contentions of the State and the defendant. N.C. Gen. Stat. § 15A-1232 Official Commentary.

In *State v. McKoy*, 331 N.C. 731, 417 S.E.2d 244 (1992), the Supreme Court held that a substantially similar instruction on an admission was not an impermissible expression of opinion on the evidence. In *McKoy*, the trial court's instructions were as follows:

> There is evidence which tends to show that the defendant has admitted the facts relating to the crime charged in this case. If you find that the defendant made that admission, then you should consider all the circumstances under which it was made in determining whether it was a truthful admission and the weight you will give to it.

*McKoy*, 331 N.C. at 733, 417 S.E.2d at 246. The Court concluded that the trial court did not err in stating that there was evidence "tending to show" that the defendant had "admitted the facts relating to the crime charged in this case." The Court relied on prior decisions which

held that "[a] trial court's use of the words 'tends to show' in reviewing the evidence does not constitute an expression of opinion on the evidence." *Id.* (citations omitted). The Court also reasoned that the instruction was proper because there was evidence from which the jury could find that the defendant had admitted a fact relating to the crime charged. *Id.* In the case before us, defendant was charged with first degree statutory sexual offense under N.C. Gen. Stat. § 14-27.4(a)(1) (1993). If the jury believed Detective Eatman's testimony, it could reasonably infer that defendant had admitted to having sexual conduct with a minor. We thus hold that the judge's instructions did not constitute an improper expression of judicial opinion on the evidence.

No error.

Chief Judge ARNOLD and Judge LEWIS concur.