An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA14-14

NORTH CAROLINA COURT OF APPEALS

Filed: 15 July 2014

STATE OF NORTH CAROLINA

v.

TREMAYNE WENDELL CARROLL

Randolph County
No. 10 CRS 050590

Appeal by defendant from judgment entered 26 April 2013 by Judge L. Todd Burke in Randolph County Superior Court. Heard in the Court of Appeals 20 May 2014.

> *Attorney General Roy Cooper, by Assistant Attorney General Jill A. Bryan, for the State.*

> *Russell J. Hollers III for defendant-appellant.*

HUNTER, Robert C., Judge.

Tremayne Wendell Carroll ("defendant") appeals from judgment entered after a jury convicted him on four counts each of first degree rape, taking indecent liberties with a child, and sex offense in a parental role. On appeal, defendant argues that the trial court erred by: (1) allowing a physician to diagnose the alleged victim as having been sexually assaulted by defendant; and (2) admitting improper expert testimony vouching

for the credibility of the child witness.

After careful review, we hold that the trial court erred in both instances, but neither amounts to plain error.

**Background**

The alleged victim in this case, T.S.[1], was born in December 1998. In 2009, she lived with her mother ("Lorraine"), her siblings, and defendant, who was her stepfather. Defendant and Lorraine experienced difficulties with their marriage and separated for a period of time in the summer of 2009.

In fall of 2009, T.S.'s maternal grandmother ("Doris") came into town to help Lorraine take care of her children. While doing laundry, Doris noticed a brownish, unusual discharge on T.S.'s underwear that made her suspicious. She confronted T.S. about the stain on 19 October 2009, and T.S. told her that defendant had sex with her. That night, Doris told Lorraine what T.S. had told Doris.

After hearing T.S.'s allegation, Lorraine took T.S. to the emergency department at Randolph Hospital. At the hospital, Lorraine approached Officer Gary Rippey ("Officer Rippey") of the Asheboro Police Department and told him that T.S. had been sexually assaulted. Officer Rippey interviewed T.S. in one of

---

[1] Pseudonyms will be used to refer to the alleged victim and her family to protect the child's privacy and for ease of reading.

the hospital rooms. T.S. told Officer Rippey that defendant sexually assaulted her five or six times between February 2009 and October 2009. She said that defendant would pick her up out of her bed, carry her into his bedroom, remove her panties, and engage in vaginal intercourse with her until ejaculating onto her stomach. After speaking with T.S., Officer Rippey contacted the Department of Social Services.

Lisa Powell ("Ms. Powell"), an employee with the Randolph County Child Protective Services, responded to Officer Rippey's call. She arrived at the hospital and conducted another interview with T.S. T.S. told Ms. Powell that beginning in February 2009, defendant engaged in vaginal intercourse with her three or four times, using the same method she had described to Officer Rippey—defendant would take her out of her bedroom and lay her onto his bed, remove her clothing, and have sex with her until ejaculating onto her stomach. T.S. also told Ms. Powell that defendant told her not to tell Lorraine, because Lorraine would not believe T.S.

After the interviews with Officer Rippey and Ms. Powell, T.S. was examined by Dr. Marcus Gentry ("Dr. Gentry"). Dr. Gentry was accepted at trial as an expert in emergency room medicine. Dr. Gentry conducted a pelvic exam and noticed a

whitish discharge coming from T.S.'s vagina. He obtained a sample of the discharge for testing. The sample returned positive for chlamydia, a sexually transmitted disease that Dr. Gentry testified could only be present after sexual activity with an infected partner. Dr. Gentry also examined T.S.'s hymen. He noted that although the hymen was intact, it had tearing and scarring indicative of older trauma. When asked at trial whether he had an opinion regarding T.S.'s symptoms and the positive test for chlamydia, Dr. Gentry testified that he believed T.S. had been sexually abused, and that since she was implicating defendant, Dr. Gentry believed defendant was responsible for the sexual abuse.

After the physical examination by Dr. Gentry, T.S. was taken to Baptist Hospital in Winston-Salem, North Carolina, where she met with Joyce Latham ("Ms. Latham"), a sexual assault nurse examiner. T.S. told Ms. Latham that beginning in February 2009, defendant would come into her room, carry her into his bedroom, remove her clothing, and then have vaginal intercourse with her before ejaculating onto her stomach. Ms. Latham did a "blind sweep" for vaginal discharge that may be indicative of a sexually transmitted disease but found none. However, she testified that a lack of discharge at that time did not

necessarily mean that T.S. did not have chlamydia. Ms. Latham took photos of T.S.'s genitals and testified at trial that they appeared abnormal; specifically, she observed irregularities in T.S.'s hymen that could be related to an older injury, but there were no signs of any recent trauma.

Dr. Angela Stanley ("Dr. Stanley") examined T.S. on 16 November 2009. Dr. Stanley testified at trial that the irregularities with T.S.'s hymen were not specific to sexual abuse. However, she clarified that T.S.'s physical exam was "supportive" of T.S.'s statement that "contact occurred." She also noted that a finding of chlamydia "would be a definite indicator that sexual contact has occurred to transmit that infection to the child."

Lorraine provided three articles of T.S.'s clothing to law enforcement personnel—one t-shirt and two pairs of panties. T.S. testified that the t-shirt her mother gave to the police had been ejaculated onto by defendant during one of the sexual assaults. Forensic scientist Jessica Posto ("Ms. Posto") testified that she examined particles from all three pieces of clothing and found sperm from the sample taken from T.S.'s t-shirt. Thereafter, Jennifer Elwell ("Ms. Elwell"), who was accepted at trial as an expert in the field of DNA analysis,

testified that the DNA profile obtained from the semen on T.S.'s shirt matched that of defendant.

The State also called T.S.'s therapist, Michelle Noble ("Ms. Noble") to testify at trial. Ms. Noble testified that she is a licensed professional counselor in North Carolina and specializes in sexual abuse cases involving children. Ms. Noble met with T.S. roughly twenty-five times. At trial, Ms. Noble testified that T.S. kept her account of abuse consistent throughout their counselling sessions. Ms. Noble also testified that in regard to child victims in general, consistency is an important indication of the child's truthfulness and that in T.S.'s case she "never felt like there was any kind of manipulation."

Defendant took the stand in his own defense at trial and denied having abused T.S. Defendant testified that he had a good relationship with T.S. and that although he and T.S. would often sleep in the same bed, no sexual contact ever occurred between them. Defendant also testified that he believed investigators tampered with evidence against him and that a mentally handicapped relative had been accused of molesting T.S. before.

The jury returned guilty verdicts on all charged crimes.

The trial court consolidated the charges into a single B1 felony and sentenced defendant to 240 to 297 months imprisonment, with credit given for 1,177 days spent in confinement prior to judgment.    Defendant gave notice of appeal in open court.

## Discussion

### I. Dr. Gentry's Opinion as to Defendant's Guilt

Defendant first argues that the trial court erred by allowing Dr. Gentry to testify that in his opinion, defendant was the individual who sexually abused T.S.  We agree that the trial court erred by admitting this testimony, but we find no plain error.

Since defendant failed to object to the admission of Dr. Gentry's testimony, we review this issue for plain error.  *See State v. Lawrence*, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012).

> For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial.  To show that an error was fundamental, a defendant must establish prejudice—that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty.

*Id.* (citation and quotation marks omitted).  Plain error is to be "applied cautiously and only in the exceptional case," or one that "seriously affect[s] the fairness, integrity or public

reputation of the judicial proceedings." *Id.* (citation and quotation marks omitted).

At trial, Dr. Gentry testified as follows: "[m]y opinion is that [T.S.] was engaged in sexual activity with someone who had chlamydia, and had passed it to her. And as she was accusing [defendant] at the time, that was my opinion, that it was the sexual abuse from [defendant]." Defendant does not challenge Dr. Gentry's opinion that T.S. had been sexually abused. He contends only that Dr. Gentry's identification of defendant as the perpetrator of the sexual abuse amounts to plain error.

"With respect to expert testimony in child sexual abuse prosecutions, our Supreme Court has approved, upon a proper foundation, the admission of expert testimony with respect to the characteristics of sexually abused children and whether the particular complainant has symptoms consistent with those characteristics." *State v. Dixon*, 150 N.C. App. 46, 52, 563 S.E.2d 594, 598, *aff'd*, 356 N.C. 428, 571 S.E.2d 584 (2002). However, even where an expert opinion that a victim has been abused is based on a proper foundation, an expert opinion that the victim was abused specifically by a particular defendant is generally not admissible. *See State v. Figured*, 116 N.C. App. 1, 9, 446 S.E.2d 838, 843 (1994) (holding that a doctor's expert

opinion that the child victim was abused by the defendant constituted improper opinion testimony because it did not relate to a diagnosis derived from physical examination of the witness in the course of medical treatment).

The State does not contest that Dr. Gentry's opinion that T.S. was sexually abused by defendant was admitted into evidence erroneously. Indeed, based on Dr. Gentry's own admission that the basis for his opinion as to defendant's guilt stemmed only from T.S.'s allegations, we conclude that this constituted improper expert opinion testimony. *See Figured*, 116 N.C. App. at 9, 446 S.E.2d at 843. However, the State argues that in the face of the overwhelming evidence indicating defendant's guilt, where the case did not turn solely on the credibility of the prosecuting witness, the erroneous admission of Dr. Gentry's testimony did not amount to plain error. We agree.

Defendant contends that the facts of this case are comparable to *State v. Ryan*, __ N.C. App. __, 734 S.E.2d 598 (2012), *disc. review denied*, __ N.C. __, 736 S.E.2d 189 (2013). In *Ryan*, this Court held that the erroneous admission of an expert's opinion that the defendant was guilty of sexually abusing the alleged child victim amounted to plain error. *Id.* at __, 734 S.E.2d at 606-07. The Court noted that "[a]ll of the

State's evidence relied in whole or in part on the child's statements concerning the alleged sexual abuse." *Id.* at __, 734 S.E.2d at 606. The only physical evidence tending to indicate that the child had been sexually abused was a hymenal notch and the presence of bacterial vaginosis, the latter of which, the Court noted, is not determinative of sexual abuse and can have unrelated causes. *Id.* at __, 734 S.E.2d at 601-06. Except for the erroneously admitted testimony of the physician who identified defendant as the perpetrator of the abuse, all of the other evidence presented by the State "amounted to conflicting accounts from the child, defendant, and their families." *Id.* at __, 734 S.E.2d at 607. Thus, because the physician was an expert in treating sexually abused children, the Court concluded that "her opinion likely held significant weight with the jury" and "had a probable impact on the jury's finding defendant guilty by enhancing the credibility of the child in the jurors' minds." *Id.*

*Ryan* is distinguishable from the present case in material aspects. First, there is significant physical evidence in addition to Dr. Gentry's opinion that both corroborates T.S.'s testimony and directly implicates defendant in the crimes charged. T.S. consistently told her family, law enforcement

personnel, and medical experts that defendant would ejaculate onto her stomach after engaging in vaginal intercourse with her. She testified that the t-shirt submitted for examination contained defendant's semen. This testimony was corroborated when the t-shirt returned a positive sample for semen and further testing showed that the semen matched defendant's DNA. Additionally, T.S. tested positive for chlamydia during her examination with Dr. Gentry. Both Dr. Gentry and Dr. Stanley testified that chlamydia can only be transmitted by sexual intercourse, unlike the bacterial vaginosis in *Ryan* which can have many causes. *See Ryan*, __ N.C. App. at __, 734 S.E.2d at 601. Lorraine testified that defendant infected her with chlamydia sometime in 2007, but defendant never sought treatment. Thus, the jury could have permissibly and reasonably inferred from this circumstantial evidence that defendant served as the source of T.S.'s infection. *See State v. Parker*, 354 N.C. 268, 279, 553 S.E.2d 885, 894 (2001) (noting that the law does not distinguish between the weight given to circumstantial and direct evidence). Furthermore, in both Dr. Gentry's and Ms. Latham's unchallenged expert opinions, the notches observed in T.S.'s hymen and the "fullness" of her genitals indicated trauma consistent with sexual abuse. Dr. Gentry testified that the

irregularity of T.S.'s hymen was consistent with older trauma, which would corroborate T.S.'s testimony that the abuse occurred throughout the approximately eight months prior to being examined by Dr. Gentry.  Finally, Lorraine testified that she came home from work one day around February 2009, which was within time frame that T.S. identified as when the abuse took place, and found T.S. and defendant in bed together, with T.S. only wearing her bra and underwear.  Lorraine testified that she was very upset when she saw them in bed and told T.S. to not sleep with defendant any more.

Aside from Dr. Gentry's identification of defendant as the perpetrator, substantial evidence was admitted at trial to support the jury's guilty verdicts.  In this respect, the facts here are comparable to those in cases where the erroneous admission of expert identification of the defendant as the perpetrator of sexual abuse did not amount to plain error.  *See, e.g.*, *Figured*, 116 N.C. App. at 9, 446 S.E.2d at 843 (holding that where physical examination by two physicians of the child victims revealed symptoms consistent with sexual abuse, there was no reasonable probability that the admission of the improper expert testimony that identified the defendant as the perpetrator affected the jury's decision).

Accordingly, after reviewing the entire record, we conclude that the erroneous admission of Dr. Gentry's opinion did not rise to the level of plain error.

**II. Ms. Noble's Expression of Opinion on T.S.'s Credibility**

Defendant next argues that the trial court erred by allowing Ms. Noble to offer an expert opinion that improperly commented on T.S.'s credibility. We agree. However, we conclude that the admission of this testimony also does not amount to plain error.

Because defendant failed to object to this testimony at trial, we review for plain error. *See Lawrence*, 365 N.C. at 518, 723 S.E.2d at 334.

"Our appellate courts have consistently held that the testimony of an expert to the effect that a prosecuting witness is believable, credible, or telling the truth is inadmissible evidence." *State v. Bailey*, 89 N.C. App. 212, 219, 365 S.E.2d 651, 655 (1988). "[T]estimony that [the expert] was not concerned that the child was giving a fictitious story is tantamount to her opinion that the child was not lying about the sexual abuse." *Ryan*, __ N.C. App. at __, 734 S.E.2d at 604 (citation and quotation marks omitted). Furthermore, the Supreme Court has found that it is reversible error when

"experts have testified that the victim was believable, had no record of lying, and had never been untruthful." *State v. Aguallo*, 322 N.C. 818, 822, 370 S.E.2d 676, 678 (1988).

Here, Ms. Noble testified extensively as to whether or not T.S. was being truthful. Specifically, Ms. Noble testified as follows:

> [T.S. is] one of the clients that I've had that was so consistent with her story from day one. She told me what happened and her story stayed consistent throughout the time that I worked with her. . . .

> [I]f something is so traumatic to you that your story stays consistent, then that it is—that's very telling; you know, that this is something that—you know, a lot—it's hard to—it's hard to keep a lie going, you know? And that's in my—in my line of business, when—you know, when kids are having behavior problems, that's—that's one thing that we can always count on, that, you know, if it's a lie, we're gonna find out sooner or later, you know. So for [T.S.] to be consistent, you know, that tells me something.

At a later point in the trial, Ms. Noble further testified that:

> You know, I—I don't have a truth detector in my office, but I—I have a pretty good gut, and I never, I never felt like there was any kind of manipulation. I felt like [T.S.] showed up and told her story and she stayed consistent throughout that time.

In light of the long-standing rule in North Carolina that an expert may not vouch for the credibility of a child witness,

we conclude that the portions of Ms. Noble's testimony specifically addressing the credibility of T.S.'s account of the abuse were erroneously admitted. Particularly, Ms. Noble testified that "[s]o for [T.S.] to be consistent, you know, that tells me something" and "[y]ou know, I—I don't have a truth detector in my office, but I—I have a pretty good gut, and I never, I never felt like there was any kind of manipulation." The former statement is similar to the testimony in *Ryan* that the expert "was not concerned that the child was giving a fictitious story," which this Court held was improper since it was "tantamount to her opinion that the child was not lying about the sexual abuse." *Ryan*, __ N.C. App. at __, 734 S.E.2d at 604. With the latter statement, Ms. Noble went farther than the witness in *Ryan*; she directly testified that she did not think T.S. was lying. Thus, because these statements vouched for the credibility of T.S.'s account of abuse, we conclude that they were admitted erroneously. *See, e.g.*, *Figured*, 116 N.C. App. at 9, 446 S.E.2d at 843; *Bailey*, 89 N.C. App. at 219, 365 S.E.2d at 655.

Although some of Ms. Noble's comments were erroneously admitted, we conclude that such error does not rise to the level of one that "seriously affects the fairness, integrity or public

reputation of judicial proceedings." *Lawrence*, 365 N.C. at 518, 723 S.E.2d at 334. The State presented substantial evidence in addition to Ms. Noble's testimony that directly implicated defendant and independently corroborated T.S.'s testimony, such as: (1) a semen stain on T.S.'s shirt that matched defendant's DNA; (2) T.S.'s positive diagnosis for chlamydia, a sexually transmitted disease that can only be transferred by sexual intercourse; (3) Lorraine's testimony that she was infected with chlamydia by defendant and that defendant never sought treatment; (4) Lorraine's testimony that she walked in on defendant and T.S. sleeping in the same bed, with T.S. only wearing a bra and panties; and (5) the expert opinions of Dr. Gentry and Ms. Latham, built on a proper foundation of physical evidence, that T.S. had been sexually abused. Thus, there was considerable evidence directly implicating defendant in the charged crimes and having the effect of independently corroborating T.S.'s testimony that defendant sexually abused her.

In light of this evidence, we conclude that there is no reasonable probability that the jury would have returned a different verdict had Ms. Noble's erroneous opinion as to T.S.'s

credibility been excluded.  Accordingly, we find no plain error.[2]
*See Lawrence*, 365 N.C. at 518, 723 S.E.2d at 334.

### Conclusion

After careful review, we hold that the trial court erred by admitting portions of Dr. Gentry's and Ms. Noble's testimony, but because these errors did not have a probable impact on the jury's verdict, they do not amount to plain error.

NO PREJUDICIAL ERROR.

Judges McGEE and ELMORE concur.

Report per Rule 30(e).

---

[2] We note that there is currently no caselaw supporting a cumulative plain error analysis in North Carolina. *See State v. Bellamy*, 172 N.C. App. 649, 662, 617 S.E.2d 81, 90 (2005) ("Where, as here, defendant contests separate admissions of evidence under the plain error rule, each admission will be analyzed separately for plain error, not cumulatively.")