**STATE v. RYAN**

[223 N.C. App. 325 (2012)]

STATE OF NORTH CAROLINA v. STEVEN FRANKLIN RYAN

No. COA12-228

(Filed 6 November 2012)

## 1. Evidence—expert opinion testimony—improper vouching for credibility of child sex abuse victim

The trial court committed plain error in a first-degree sex offense and taking indecent liberties with a child case by allowing the State's expert witness to improperly vouch for the credibility of a minor child victim when the expert stated that she had no concerns the child was giving a fictitious story and that there was no evidence that there was a different perpetrator other than defendant. Considering the testimony in light of the other evidence, the testimony had a probable impact on the jury's finding defendant guilty by enhancing the credibility of the child in the jurors' minds.

## 2. Evidence—expert testimony—inadmissible—not relevant to determination of guilt or innocence

Although the trial court did not commit plain error in a first-degree sex offense and taking indecent liberties with a child case by allowing testimony by the State's expert witness regarding her concern that defendant was living with his seven-year-old granddaughter at the time of the child's allegations, the testimony was not relevant to a determination of defendant's guilt or innocence and was therefore inadmissible. Accordingly, if the expert's written report is introduced into evidence on retrial, such notation should be redacted from the report.

## 3. Satellite-Based Monitoring—sexually violent offense—first-degree sex offense—indecent liberties with child

Because defendant's judgments were vacated, his arguments concerning the trial court's sex offender registration and satellite-based monitoring orders were not addressed. However, both of defendant's convictions for first-degree sex offense and taking indecent liberties with a child were encompassed in the definition of "a sexually violent offense" under N.C.G.S. § 14-208.6(5), and therefore they were both reportable convictions under the statute.

Appeal by defendant from judgments entered 31 May 2011 by Judge Ola M. Lewis in Johnston County Superior Court. Heard in the Court of Appeals 30 August 2012.

*Attorney General Roy Cooper, by Assistant Attorney General Jane Rankin Thompson, for the State.*

*Robert H. Hale, Jr. & Associates, Attorneys at Law, P.C., by Daniel M. Blau, for defendant appellant.*

McCULLOUGH, Judge.

On 31 May 2011, Steven Franklin Ryan ("defendant") was convicted of one count of first-degree sex offense and two counts of taking indecent liberties with a child. On appeal, defendant contends he is entitled to a new trial for the following reasons: (1) the trial court's failure to reinstruct the deadlocked jury unconstitutionally coerced guilty verdicts; (2) the trial court abused its discretion in denying defendant's motion for a mistrial based upon the existence of a deadlocked jury; (3) the testimony of a State's witness vouching for the credibility of the minor child constituted plain error; (4) the State's closing argument was so improper as to necessitate *ex mero motu* intervention; and (5) the admission of the State's evidence regarding defendant's living arrangements with his granddaughter constituted plain error. Defendant also contends the trial court erred in ordering him to register as a sex offender and enroll in lifetime satellite-based monitoring ("SBM"). We hold the testimony of the State's expert witness vouching for the credibility of the minor child constituted plain error in this case, and therefore we order a new trial for defendant.

## I. Background

The child victim in the present case ("the child") testified that she was 13 years old and was completing the eighth grade at the time of trial. She lived with her grandmother, Donna Allen ("Allen") from the time she was two until she was age ten. In 2007, the child and Allen were living with defendant in his three-bedroom trailer home.

The child testified she was left alone with defendant while Allen worked at night. She testified that at the end of her fourth grade year, when she was approximately ten years old, defendant began rubbing her back while wearing only his robe, and she could see his penis under his opened robe. She testified that defendant also kissed her. The child told Allen about the back rubs, but not about seeing defend-

ant's penis or that he had kissed her. Allen confronted defendant about the back rubs, but the child testified the back rubs continued.

By the beginning of her fifth grade year, the child testified defendant put his mouth on her breasts and her vagina and put his penis in her vagina and butt. She testified that when she went to the bathroom to urinate afterward, "[i]t was burning and hurting." The child testified defendant also put his fingers in her vagina. She testified that defendant told her that if she said anything about the encounters, he would break up with her grandmother. The child testified that during the encounters, she asked defendant to stop, and on one occasion she hit defendant. On one occasion, around her tenth birthday in August 2007, the child testified defendant held her arms down, kissed her, and then kissed her breasts and licked her vagina. The child testified defendant also took her hand and put it on his penis.

Sometime in late 2007 or early 2008, Allen's relationship with defendant deteriorated and the two broke up. Criminal charges were filed by both Allen and defendant against the other but were subsequently dropped. Evidence was introduced that at the time of the breakup, defendant had been drinking and threw Allen's belongings into the yard, at which point Allen left the residence. Evidence was also introduced indicating that Allen had threatened defendant, saying that he would not live in his house without her. Further evidence was introduced that following the breakup, defendant and Allen were civil to each other and performed favors for each other, such as providing transportation, haircuts, and machine maintenance.

The child went to live with her mother, Cailey, after her grandmother and defendant broke up. In September 2009, approximately two years after the alleged sexual abuse, the child told her mother defendant had raped her without providing any details. The child testified that she waited two years to tell anyone because she was scared and thought the sexual contact was her fault. The child also testified she came forward with the allegations because defendant was living with his seven-year-old granddaughter and she was afraid defendant would abuse her as well.

After the child told Cailey that defendant had raped her, Cailey informed Allen of what the child had said, and the two immediately took the child to speak with a relative who was a detective with the Johnston County Sheriff's Office, Kevin Massengill ("Detective Massengill"). The child initially remained in the vehicle while Allen informed Detective Massengill of the child's sexual assault accusa-

tions against defendant. Detective Massengill then spoke with the child about the accusations and advised Allen to seek a child medical evaluation. Detective Massengill testified that the child did not provide any details of the alleged incidents, but that she only stated she had been touched inappropriately. On the following day, Allen and Cailey took the child to WakeMed Hospital and were referred to a specialist.

Also on the following day, Detective Massengill referred the case to his supervisor at the Sheriff's Office. Detective Toni Lee ("Detective Lee") was assigned to the case. Detective Lee was an acquaintance of the child's family. Detective Lee interviewed the child about the allegations for approximately thirty minutes. Allen was present in the room while Detective Lee interviewed the child. During the interview, the child informed Detective Lee that once when she was home alone with defendant, he had kissed her. She also stated that defendant had rubbed her back twice and she had told him to stop. She further stated that one night, defendant held her down, kissed her on the mouth and on her breasts, stuck his fingers and tongue in her private area, and put his penis in her vagina.

Following her interview with the child, Detective Lee attempted to contact defendant at his residence and left her business card asking him to contact her. Defendant contacted her 23 minutes later and informed her he would be glad to speak with her and that she was welcome to come by. Detective Lee returned to defendant's residence and spoke with him about the child's allegations. The conversation lasted approximately six minutes, during which defendant denied the allegations and suggested to Detective Lee that Allen had influenced the child to fabricate the allegations against him. Following her interview with defendant, Detective Lee concluded that the child's accusations against defendant were not fabricated and did not conduct any further investigation.

On referral from WakeMed, the child was seen by Dr. Laura Gutman ("Dr. Gutman"), a pediatrician specializing in child maltreatment and child sexual abuse. Dr. Gutman was qualified as an expert witness in the field at trial. Dr. Gutman interviewed Cailey about the child's medical history and then talked at length with the child about the sexual abuse allegations. The child informed Dr. Gutman about the back rubs and defendant's exposing himself to her. Dr. Gutman then used anatomically correct dolls and proceeded to lead the child to various body parts, asking her if anything had happened there. During the body inventory, the child informed Dr. Gutman that defend-

ant had placed his tongue in her mouth and had put his penis in her private area. The child also informed Dr. Gutman that defendant had felt her breasts and private area with his fingers. When Dr. Gutman asked the child if anything happened in the anal area, the child responded defendant had put his penis in her butt. The child also stated defendant had put his penis in her mouth. Dr. Gutman testified about the child's ability to describe "sensory detail[s]" about these alleged incidents, such as the taste of defendant's tongue and the warmth of his penis. Dr. Gutman further testified that the child reported mental health symptoms that are common in sexually abused children, including nightmares, embarrassment, dissociation, and anger. The child told Dr. Gutman that no one else had touched her sexually.

Following her lengthy interview with the child, Dr. Gutman performed a physical exam on the child. She observed a deep notch in the child's hymen, which she testified was highly suggestive of vaginal penetration. Dr. Gutman also examined the child's anus and found it to be normal, although she testified that physical findings of anal abuse are uncommon. Finally, Dr. Gutman tested the child for sexually transmitted diseases. The tests were negative, except that the child was diagnosed with the presence of bacterial vaginosis. Dr. Gutman testified that the presence of bacterial vaginosis can be indicative of a vaginal injury, although it is the most common genital infection in women and can have many causes. Cailey had indicated the child had symptoms of vaginosis as early as 2006, which predated the alleged abuse. Based on the presence of the hymenal notch and bacterial vaginosis, and the child's history as taken from both Cailey and the child, Dr. Gutman testified as to her conclusion that the child had been sexually abused, that she had no indication the child's story was fictitious or that the child had been coached, and that defendant was the perpetrator.

The child also met with licensed clinical social worker Stacey Drake ("Drake"). Drake testified she provided therapy for the child's mental health issues and encouraged the child to keep a private journal about the alleged abuse as a coping method. Drake testified that when she first met with the child, the child was shy, made no eye contact, had a difficult time talking, and was acting very angry at home. Drake also testified the child was doing poorly in school and had gained weight. Drake testified the child had made progress with her mental health issues as of June 2010.

Defendant testified at trial in his own defense. He admitted to rubbing the child's back twice but stated he had stopped when Allen asked him to. Defendant repeatedly denied the allegations of sexual abuse and maintained that he and the child had always had a good relationship. Defendant testified there were other men, some with known criminal records, who had visited with Allen in the presence of the child following their breakup. Defendant testified concerning his belief that Allen had compelled the child to fabricate the allegations against him. Defendant's ex-wife also testified on defendant's behalf, stating that some time in 2007, after defendant's breakup with Allen, she was giving defendant a ride when they saw the child in her yard. She testified the child ran towards the truck waving and calling defendant's name and appeared happy to see him.

On 5 April 2010, defendant was indicted on two counts of first-degree rape, two counts of first-degree sex offense, and two counts of taking indecent liberties with a child. The State dismissed one count of first-degree rape prior to trial. Defendant was tried on the remaining five charges before a jury beginning 23 May 2011. Following three indications of deadlock by the jury, defendant moved for a mistrial, which was denied by the trial court. After approximately four hours of deliberations over two days, the jury returned unanimous verdicts on all five counts. The jury found defendant not guilty of first-degree rape and one count of first-degree sex offense. The jury found defendant guilty of the remaining charges—one count of first-degree sex offense and two counts of taking indecent liberties with a child. The trial court entered judgment on the verdicts, sentencing defendant to consecutive terms of 288-355 and 19-23 months' imprisonment. The trial court also ordered defendant to register as a sex offender and enroll in lifetime SBM. Defendant gave oral notice of appeal in open court following his convictions and has filed a petition for writ of certiorari with this Court seeking review of the trial court's sex offender registration and SBM orders.

## II. Improper Expert Opinion Testimony Vouching For Credibility of Minor Child

**[1]** We first address defendant's argument that the trial court both erred and committed plain error in allowing the State's expert witness, Dr. Gutman, to improperly vouch for the credibility of the minor child. Defendant objected to some portions of Dr. Gutman's testimony, but not to others. Accordingly, this Court reviews those portions to

which defendant objected for prejudicial error and those portions to which defendant did not object for plain error.

Generally, an alleged error is prejudicial if "there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial[.]" N.C. Gen. Stat. § 15A-1443(a) (2011). Nonetheless, "[e]videntiary errors are harmless unless a defendant proves that absent the error a different result would have been reached at trial." *State v. Ferguson*, 145 N.C. App. 302, 307, 549 S.E.2d 889, 893, *disc. review denied*, 354 N.C. 223, 554 S.E.2d 650 (2001).

"In criminal cases, an issue that was not preserved by objection noted at trial and that is not deemed preserved by rule or law without any such action nevertheless may be made the basis of an issue presented on appeal when the judicial action questioned is specifically and distinctly contended to amount to plain error." N.C.R. App. P. 10(a)(4) (2012); *see also State v. Goss*, 361 N.C. 610, 622, 651 S.E.2d 867, 875 (2007). Plain error arises when the error is " 'so basic, so prejudicial, so lacking in its elements that justice cannot have been done[.]' " *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (quoting *United States v. McCaskill*, 676 F.2d 995, 1002 (4th Cir. 1982)). "Under the plain error rule, defendant must convince this Court not only that there was error, but that absent the error, the jury probably would have reached a different result." *State v. Jordan*, 333 N.C. 431, 440, 426 S.E.2d 692,.697 (1993). In its recent opinion in *State v. Towe*, ___ N.C. ___, ___ S.E.2d ___, No. 121PA11 (June 14, 2012), our Supreme Court reiterated the plain error standard, stating that "to establish plain error [a] defendant must show that a fundamental error occurred at his trial and that the error '"had a probable impact on the jury's finding that the defendant was guilty." ' " *Id.* at ___, ___ S.E.2d at ___, No. 121PA11, slip. op. at 11 (quoting *State v. Lawrence*, ___ N.C. ___, ___, 723 S.E.2d 326, 333 (2012) (quoting *Odom*, 307 N.C. at 660, 300 S.E.2d at 378)).

Here, those portions of Dr. Gutman's testimony challenged by defendant on appeal can be classified into three categories: (1) expert opinion testimony concluding that the child had been sexually abused, (2) expert opinion testimony that the child's story was not fictitious, and (3) expert opinion testimony that the child had not been coached. Defendant also challenges Dr. Gutman's testimony as to her conclusion that defendant was the perpetrator of the sexual abuse on the child.

### A. Conclusion of Sexual Abuse

It is well-settled law that "[e]xpert opinion testimony is not admissible to establish the credibility of the victim as a witness." *State v. Dixon*, 150 N.C. App. 46, 52, 563 S.E.2d 594, 598, *aff'd*, 356 N.C. 428, 571 S.E.2d 584 (2002). Nonetheless, "[w]ith respect to expert testimony in child sexual abuse prosecutions, our Supreme Court has approved, upon a proper foundation, the admission of expert testimony with respect to the characteristics of sexually abused children and whether the particular complainant has symptoms consistent with those characteristics." *Id.* (citing *State v. Stancil*, 355 N.C. 266, 267, 559 S.E.2d 788, 789 (2002); *State v. Kennedy*, 320 N.C. 20, 31-32, 357 S.E.2d 359, 366-67 (1987)).

In addition, "an expert medical witness may render an opinion pursuant to Rule 702 that sexual abuse has in fact occurred if the State establishes a proper foundation, i.e. physical evidence consistent with sexual abuse." *Id.* "However, in the absence of physical evidence to support a diagnosis of sexual abuse, expert testimony that sexual abuse has in fact occurred is not admissible because it is an impermissible opinion regarding the victim's credibility." *Id.; see also Stancil*, 355 N.C. at 266-67, 559 S.E.2d at 789 ("In a sexual offense prosecution involving a child victim, the trial court should not admit expert opinion that sexual abuse has *in fact* occurred because, absent physical evidence supporting a diagnosis of sexual abuse, such testimony is an impermissible opinion regarding the victim's credibility."). Thus, "[t]estimony that a child has been 'sexually abused' based solely on interviews with the child [is] improper." *State v. Grover*, 142 N.C. App. 411, 419, 543 S.E.2d 179, 183, *aff'd*, 354 N.C. 354, 553 S.E.2d 679 (2001); *see also State v. Bates*, 140 N.C. App. 743, 748, 538 S.E.2d 597, 601 (2000) (acknowledging that where an expert witness conducted an interview and a physical examination of a child who claimed she had been sexually abused, and where the child's physical examination revealed no evidence that the child had been sexually abused, expert testimony "diagnos[ing]" the child as a victim of sexual abuse based solely on the child's statement that she had been abused lacked a proper foundation and should not have been admitted). Our Supreme Court reaffirmed these legal principles in its recent opinion in *Towe*, ___ N.C. at ___, ___ S.E.2d at ___, No. 121PA11, slip. op. at 9-10.

In the present case, Dr. Gutman testified that based upon her training, education, and experience, as well as her examination of the child, she concluded that the history given by the child and her phys-

ical findings "were consistent with sexual abuse[.]" Similarly, in Dr. Gutman's written report, she concluded that the child had been "sexually assaulted" based upon her medical evaluation of the child. We hold Dr. Gutman's conclusions in this regard were properly admitted, given the physical evidence of the child's unusual hymenal notch and bacterial vaginosis.

We note that in both her testimony and in her written report, Dr. Gutman did not state which acts of alleged sexual abuse she concluded had occurred, although she noted the various types of sexual acts alleged by the child in both her testimony and her written report. Had Dr. Gutman testified as to her specific conclusion that the child had been the victim of both vaginal and anal sexual abuse, we would hold the admission of such testimony to be error, as the State presented no physical evidence of anal sexual abuse, and Dr. Gutman admitted on cross-examination that such a conclusion would be based solely on her interview with the child.

However, Dr. Gutman did not give an opinion as to which specific assault she concluded had occurred. Rather, Dr. Gutman stated only her conclusions that the child's history and physical findings were "consistent with sexual abuse" and that based on her medical evaluation of the child, the child had been "sexually assaulted." Because the State introduced a proper foundation of physical evidence—the unusual deep hymenal notch and the presence of the child's vaginosis—prior to Dr. Gutman's stating her conclusion of sexual abuse, we cannot conclude it was error for Dr. Gutman to testify as to her general conclusions. *Cf. Towe*, ___ N.C. at ___, ___ S.E.2d at ___, No. 121PA11, slip. op. at 10 (expert witness testified "that she observed no injuries during her physical examination of the victim, that the victim's hymen appeared normal and smooth, and that the victim displayed no physical symptoms diagnostic of sexual abuse").

### B. Truthfulness of Child and Coaching

" '[O]ur appellate courts have consistently held that the testimony of an expert to the effect that a prosecuting witness is believable, credible, or telling the truth is inadmissible evidence.' " *State v. Dick*, 126 N.C. App. 312, 315, 485 S.E.2d 88, 89 (1997) (quoting *State v. Bailey*, 89 N.C. App. 212, 219, 365 S.E.2d 651, 655 (1988)). Accordingly, our Supreme Court "has found reversible error when experts have testified that the victim was believable, had no record of lying, and had never been untruthful." *State v. Aguallo*, 322 N.C. 818, 822, 370 S.E.2d 676, 678 (1988) (citing *State v. Aguallo*, 318 N.C. 590,

350 S.E.2d 76 (1986); *State v. Kim*, 318 N.C. 614, 350 S.E.2d 347 (1986); *State v. Heath*, 316 N.C. 337, 341 S.E.2d 565 (1986)). However, our Supreme Court has agreed that "a statement that a child was not coached is not a statement on the child's truthfulness." *State v. Baymon*, 336 N.C. 748, 752, 446 S.E.2d 1, 3 (1994).

In the present case, the following exchange occurred on redirect examination of Dr. Gutman:

Q. [H]ave you ever diagnosed or made a finding that [a] child is not being truthful?

A. I have done that on several occasions.

Q. Can you explain to the jurors what you look for, the clues that you look for, and do you do that in every case?

A. I do it in every case.

. . . .

Q. Was there anything about your examination of [the child] that gave you any concerns in this regard?

A. That gave me concerns that she was giving a fictitious story?

Q. Yes.

A. Nothing. There was nothing about the evaluation which led me to have those concerns. And again, as I was getting into her history and considering this as a possibility, nothing came out.

We conclude Dr. Gutman's testimony that she was not concerned that the child was "giving a fictitious story" is tantamount to her opinion that the child was not lying about the sexual abuse. *See, e.g., Heath*, 316 N.C. at 341-42, 341 S.E.2d at 568 (prosecutor's question to expert whether child victim was suffering from a mental condition which could have caused her to make up a story about sexual assault was designed to elicit expert's opinion as to whether child victim might have lied about the alleged assault and constituted inadmissible opinion testimony as to child's credibility). Our Supreme Court and this Court have repeatedly held that such testimony is inadmissible, and we hold the trial court erred in allowing Dr. Gutman to so testify.

The State argues that defendant opened the door to this particular testimony by contending that the child was coached into bringing the sexual abuse allegations against defendant. The State maintains that because defendant revealed this theory in his opening arguments to the

jury and in his cross-examination of the child and her grandmother, he opened the door to Dr. Gutman's opinion testimony that the child had not been coached. We are not persuaded by the State's argument.

Dr. Gutman testified separately regarding indications that a child has been "coached" and that, based upon her examination of the child, she concluded there were no indications that the child "had been coached in any way[.]" This testimony was elicited on direct examination, prior to Dr. Gutman's testimony that she had no concerns that the child was giving a fictitious story. Dr. Gutman testified again on redirect examination that she had no concerns that the child "had been coached in any way[.]" Given our Supreme Court's holding in *Baymon*, as denoted above, such opinion testimony that the child had not been "coached" was admissible. *Baymon*, 336 N.C. at 752, 446 S.E.2d at 3. The State, therefore, addressed defendant's "coaching" argument through separate, admissible testimony. However, opinion testimony that a child has not been "coached" is distinguishable from opinion testimony that a child is not lying or is not giving a fictitious story—testimony that is clearly inadmissible under our case law.

Our Supreme Court has noted, as the State contends, that "[u]nder certain circumstances, . . . otherwise inadmissible evidence may be admissible if the door has been opened by the opposing party's cross-examination of the witness." *Id.* Thus, "[t]his evidence is allowed only if defendant 'opened the door' by addressing the victims' credibility on cross-examination" of the witness presently testifying. *State v. Thaggard*, 168 N.C. App. 263, 274, 608 S.E.2d 774, 782 (2005). Despite the State's argument to the contrary, defendant's theory of the case, his opening arguments, and his cross-examination of other witnesses do not "open the door" to otherwise inadmissible testimony by a different witness. Otherwise, defendant's ability to put on a defense would be severely impaired. As to defendant's cross-examination of Dr. Gutman, the only questions relevant to the child's credibility consisted of questions concerning whether "[s]ome people make up stories of abuse" and whether some children "make false accusations" or "false representations[.]" We cannot say such generalized questions on cross-examination opened the door for Dr. Gutman to testify as to her opinion that the child in this case was not giving a fictitious story.

### C. Defendant as Perpetrator

In addition to this testimony, Dr. Gutman further concluded that "there was no evidence that there was a different perpetrator" other than defendant. Dr. Gutman based her conclusion on her interview

with the child. In *State v. Brigman*, 178 N.C. App. 78, 632 S.E.2d 498 (2006), a pediatrician specializing in the diagnosis of sexual assault injuries in children testified as an expert concerning her conclusion that the child victims had "suffered sexual abuse by [defendant]." *Id.* at 85-86, 632 S.E.2d at 503. On appeal in *Brigman*, the defendant argued the doctor's testimony "constituted expert testimony on the guilt of the defendant." *Id.* at 91, 632 S.E.2d at 507. This Court agreed with the defendant's contention, holding that such testimony was "improper opinion testimony concerning the victims' credibility." *Id.* at 91-92, 632 S.E.2d at 507. Similarly, in *State v. Figured*, 116 N.C. App. 1, 446 S.E.2d 838 (1994), this Court held that testimony by an expert stating that "in his opinion the children were sexually abused *by this defendant*" constituted an expression of opinion as to the defendant's guilt and was thus improper. *Id.* at 8-9, 446 S.E.2d at 842-43. This Court reasoned that the doctor's "opinion that the children were sexually abused *by defendant* did not relate to a diagnosis derived from his expert examination of the prosecuting witnesses in the course of treatment. It thus constituted improper opinion testimony as to the credibility of the victims' testimony." *Id.* at 9, 446 S.E.2d at 843.

Here, we find no discernible difference between Dr. Gutman's testimony that "there was no evidence that there was a different perpetrator" other than defendant and the testimony by the doctors in *Brigman* and *Figured* that the child had been sexually abused by the defendant. Thus, the admission of such testimony constituted improper opinion testimony as to the credibility of the child's testimony and was also error.

### D. *Prejudicial Error*

Because we hold Dr. Gutman's testimony that she had no concerns the child was giving a fictitious story and that there was no evidence that there was a different perpetrator other than defendant was inadmissible, we must address whether the error was prejudicial to defendant in this case. Defendant did not object to these particular lines of questioning, therefore we review for plain error.

Under our plain error review, "we must consider whether the erroneous admission of expert testimony that impermissibly bolstered the victim's credibility had the 'prejudicial effect necessary to establish that the error was a fundamental error.' " *Towe*, ___ N.C. at ___, ___ S.E.2d at ___, No. 121PA11, slip. op. at 11 (quoting *Lawrence*, ___ N.C. at ___, 723 S.E.2d at 335). "This Court has held that it is fun-

damental to a fair trial that a witness's credibility be determined by a jury, that expert opinion on the credibility of a witness is inadmissible, and that the admission of such testimony is prejudicial when the State's case depends largely on the testimony of the prosecuting witness." *Dixon*, 150 N.C. App. at 53, 563 S.E.2d at 599.

Notably, a review of relevant case law reveals that where the evidence is fairly evenly divided, or where the evidence consists largely of the child victim's testimony and testimony by corroborating witnesses with minimal physical evidence, especially where the defendant has put on rebuttal evidence, the error is generally found to be prejudicial, even on plain error review, since the expert's opinion on the victim's credibility likely swayed the jury's decision in favor of finding the defendant guilty of a sexual assault charge. *See Aguallo*, 318 N.C. at 599-600, 350 S.E.2d at 82; *State v. Trent*, 320 N.C. 610, 615, 359 S.E.2d 463, 466 (1987); *State v. Bush*, 164 N.C. App. 254, 259-60, 595 S.E.2d 715, 718-19 (2004); *State v. O'Connor*, 150 N.C. App. 710, 712, 564 S.E.2d 296, 297 (2002); *State v. Parker*, 111 N.C. App. 359, 366, 432 S.E.2d 705, 710 (1993).

In the present case, the State's evidence consisted of testimony from the child, her family members, her therapist, the lead detective on the case who was an acquaintance of the family, and an expert witness. All of the State's evidence relied in whole or in part on the child's statements concerning the alleged sexual abuse. The only physical evidence presented that bolstered the State's case that the child had been sexually abused was a deep hymenal notch in the child's vagina and the presence of bacterial vaginosis. However, Cailey testified that the child's symptoms of bacterial vaginosis predated the alleged sexual assaults by defendant. In addition, more than two years had elapsed since the alleged sexual contact and the child's medical examination. Further, there was no physical evidence that bolstered the State's case that the child was anally assaulted or that defendant was the perpetrator of any such abuse. There was no testimony presented by the State that did not have as its origin the accusations of the child. For this reason, the credibility of the child was central to the State's case.

In addition, the State presented Dr. Gutman as a specialist in child maltreatment and child sexual abuse. Dr. Gutman described her training and experience, specifically focusing on child infectious diseases, including sexually transmitted infections, and child sexual abuse. Dr. Gutman testified that she helped found a hospital clinic for

child maltreatment, that she had authored numerous publications on child sexual abuse, that she had seen approximately 1300-1400 cases of child maltreatment or child sexual abuse, that she had testified as an expert in the field 28 times in the five years prior to the trial of the present case, and that she had helped to train or teach other pediatricians in this field. Upon review of the record, it is clear that Dr. Gutman's testimony was central to the State's case, as her testimony comprises approximately 161 pages of the trial transcript, which is roughly equivalent to the testimony of the child, Cailey, Allen, Detective Massengill, and Detective Lee combined.

Defendant's evidence consisted of his testimony that he did not sexually abuse the child. Defendant's ex-wife also testified that she was with defendant on one occasion following the alleged sexual abuse and the child seemed happy to see defendant drive by and was shouting and waving at him. Evidence was also introduced that other men, some with known criminal records, had been in the presence of the child following defendant's split with Allen and prior to the child's sexual assault allegations, although the lead detective failed to investigate these other men. The child's account of what happened evolved over time, and new allegations of what happened to her, particularly the anal assault, came out during her evaluation by Dr. Gutman.

Except for Dr. Gutman's testimony, the evidence presented at trial amounted to conflicting accounts from the child, defendant, and their families. Because Dr. Gutman was an expert in treating sexually abused children, her opinion likely held significant weight with the jury. Considering Dr. Gutman's testimony in light of the other evidence, we must conclude the testimony in question had a probable impact on the jury's finding defendant guilty by enhancing the credibility of the child in the jurors' minds. Thus, we hold Dr. Gutman's improper expert opinion testimony vouching for the credibility of the child constituted plain error in this case. We must, therefore, vacate the judgments and order a new trial for defendant.

### III.  Remaining Issues

Having ordered a new trial for defendant on this issue, we shall comment only briefly upon those remaining issues raised by defendant that are likely to recur on retrial. We will not address defendant's first two arguments regarding the trial court's failure to reinstruct the deadlocked jury or his request for a mistrial, nor will we address his fourth argument regarding his objection to the prosecutor's closing argument, as these issues are not likely to recur.

[2] In his fifth argument on appeal, defendant argues the trial court committed plain error in allowing testimony by Dr. Gutman regarding her concern that defendant was living with his seven-year-old granddaughter at the time of the child's allegations. Defendant argues this testimony was irrelevant, and therefore inadmissible, as it made it no more probable that he had sexually abused the child.

In the present case, the entirety of the testimony concerning defendant's living with his granddaughter consisted of the following. On direct examination of the child, the following exchange took place:

Q. What made you wait two years and tell your mom in 2009?

A. I was scared because I thought it was my fault.

Q. Did you think about the defendant who lived with the defendant (sic)?

A. Uh-huh.

Q. Did you think about who was living with [defendant] at that time?

A. Yeah.

Q. Who was living with him?

A. His granddaughter.

Q. How old was she?

A. I'm not sure.

Q. Younger or older than you?

A. She's younger than me.

Q. And the fact that he was living with his granddaughter, how did that make you feel?

A. It made me feel bad.

Q. Why? What were you thinking?

A. That he might do it to her.

Q. So because of that, what did you tell your mom?

A. I told her what he had done.

Such evidence is relevant to the child's motives for reporting the alleged sexual abuse. *See State v. Whitman,* 179 N.C. App. 657, 668, 635 S.E.2d 906, 913 (2006) (photographs of two other children admissible because they were relevant to child victim's motives for coming forward with allegations of sexual abuse against the defendant).

Subsequently, during the direct examination of Dr. Gutman, Dr. Gutman testified that she had learned from the child's mother that defendant had a granddaughter "who is seven, who lived with him at that time currently" and that in her written report, she "noted with concern that [defendant] is reported to be living with a granddaughter who is age seven." Defendant did not object to any of the foregoing testimony. Although we believe the admission of such evidence did not rise to the level of plain error in this case, defendant is correct that Dr. Gutman's testimony as to this fact was not relevant to a determination of his guilt or innocence and was therefore inadmissible. Accordingly, if Dr. Gutman's written report is introduced into evidence on retrial, such notation should be redacted from the report.

[3] Finally, because we vacate defendant's judgments in the present case, we need not address his arguments concerning the trial court's sex offender registration and SBM orders. However, we note that the trial court's findings that defendant had been convicted of a reportable conviction, specifically "an offense against a minor under G.S. 14-208.6(1m)," as well as "rape of a child, G.S. 14-27.2A, or sexual offense with a child, G.S. 14-27.4A" were erroneous. Defendant's convictions for first-degree sex offense, a violation of N.C. Gen. Stat. § 14-27.4, and taking indecent liberties with a child, a violation of N.C. Gen. Stat. § 14-202.1, do not fall within the statutory definition of an "offense against a minor" or a "sexual offense with a child" pursuant to N.C. Gen. Stat. § 14-27.4A. However, both of defendant's convictions for first-degree sex offense and taking indecent liberties with a child are encompassed in the definition of "a sexually violent offense" under N.C. Gen. Stat. § 14-208.6(5), and therefore they are both reportable convictions under the statute.

## IV. Conclusion

We hold Dr. Gutman's testimony that she had no concerns the child victim was giving a fictitious story was tantamount to expert opinion testimony that the child was not lying about the sexual abuse allegations, and therefore such testimony was inadmissible. Similarly, Dr. Gutman's testimony that there was no evidence of any other perpetrators of sexual abuse on the child other than defendant likewise

constituted improper expert opinion testimony concerning both the guilt of defendant and the credibility of the child.

Given that Dr. Gutman's testimony was central to the State's case, and in light of the minimal physical evidence and other conflicting testimony presented at trial, we hold Dr. Gutman's improper opinion testimony vouching for the credibility of the child had a probable impact on the jury's finding defendant guilty, and therefore, the admission of such testimony constituted plain error, necessitating a new trial for defendant.

New trial.

Judges HUNTER, JR., (Robert N.) and ERVIN concur.