IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA 24-815

Filed 2 July 2025

Wake County, Nos. 18 CRS 201795-910, 19 CRS 218465-910, 19 CR 218467-910

STATE OF NORTH CAROLINA

v.

KEVIN LEIGH WINGATE

Appeal by defendant from judgment entered 27 July 2023 by Judge Keith O. Gregory in Superior Court, Wake County. Heard in the Court of Appeals 19 May 2025.

*Attorney General Jeff Jackson, by Special Deputy Attorney General Tamika L. Henderson, for the State.*

*George B. Currin, and Cheshire Parker Schneider PLLC, by Hart Miles, for defendant.*

ARROWOOD, Judge.

Kevin Leigh Wingate ("defendant") appeals from judgment following a jury verdict finding him guilty of four counts of indecent liberties with a child and one count of a first degree statutory sex offense, and subsequent imposition of a 364 months minimum, 536 months maximum prison sentence. For the following reasons, we vacate defendant's sentence, and remand this matter to the trial court for a new trial.

## I.    Factual Background

On 29 January 2018, the Apex Police Department issued three warrants for the arrest of defendant, on two counts of taking indecent liberties with a child under N.C.G.S. § 14-202.1, and one count of first degree statutory sex offense under N.C.G.S. § 14-27.29.  Defendant was ultimately indicted on four counts of indecent liberties and one count of first degree statutory sex offense, all under the statutes cited in the arrest warrants.  Following his arraignment, defendant pleaded not guilty on 25 July 2018.  Defendant's trial began a full five years later on 24 July 2023, lasting four days and concluding on 27 July.  The testimony at trial tended to show the following.

Defendant is father to a son, James[1], who was 12 years old in September 2017. At that time, James' mother was vacationing in Scotland, leaving his father to watch him and his sister.  James testified that defendant walked into James' room while he was playing video games and began discussing puberty and adolescence, which James found unusual.  Defendant then proceeded to pull his pants down and told James to touch his penis; when James declined, defendant grabbed James' hand and forced him to pull on defendant's penis.  James then pulled his own pants down at defendant's request, and defendant performed what James described as a "doctor's examination," where defendant inspected James' penis, although James was unable

---

[1] A pseudonym is used to protect the identity of the victim, who was a minor at the time of the offense and at the time of trial.

to remember if defendant touched it. Defendant then lay on the bed with his penis out and asked James if he had any questions.

Defendant then left the room and James resumed playing video games, only for defendant to return again two hours later. Defendant began to talk to James about his uncles who were gay, and some details about gay relationships; James found this puzzling, as his uncles were not a significant part of his life. Defendant left, then returned an hour later and told James that if he played with defendant the way his uncles played, he would get pizza. James declined, to which defendant responded, "Good job," and gave James a high five. Defendant left and a little while later made a frozen pizza for the children. James testified that there were no more uncomfortable encounters while his mother was in Scotland, but defendant would occasionally wrestle with him.

James did not tell his mother what defendant had done when she arrived home, as he thought it could have simply been a normal experience. However, during a health class covering instances of abuse, James testified that he realized that what defendant had done was not actually normal. Then, the first weekend after his mother had returned home, she and James' sister were downstairs, while he was upstairs in his room playing video games. James testified that defendant came in and began wrestling with James as he had in the past; but defendant proceeded to overpower James, who was wearing cotton pajama pants, and he said he felt defendant's penis go inside his anus about 12 times. James brought his arm forward

to try and get off bed, but defendant grabbed and pulled on his arm. After James began to cry, defendant let him go, and James went downstairs to tell him mother that defendant had hurt his shoulder.

James did not initially tell his mother about anything that defendant had done other than hurt his shoulder; he testified that immediately afterwards, his mind was "clouded with the fact that my shoulder was hurting and I was crying," and that he was unsure whether what had just happened was a type of wrestling move. He eventually told his mother that defendant had made James touch his penis, but not about the anal penetrations; he testified that he was unsure why he did not tell his mother this. James' mother had him visit her own therapist, then James spoke with Kennedy Gayno ("Mr. Gayno"), an intake social worker with Child Protective Services, on 25 October 2017. Mr. Gayno testified at trial that James told him about the incident of defendant pulling his pants down and trying to force James to touch his penis. Mr. Gayno did a home visit to defendant that same day, where defendant admitted to pulling down his pants and showing James his penis, but denied forcing him to touch it. Defendant agreed to move out of the home due to his admitted exposing himself.

James met with Leigh Howell ("Ms. Howell"), a child abuse evaluation specialist at SAFEchild, a child advocacy center, on 28 November 2017, where she conducted a forensic interview. At trial, Ms. Howell was deemed an expert in the diagnostic interviewing of children and the disclosure process for child sexual abuse.

During this interview, James told Ms. Howell that he never touched his father's penis, nor did he disclose the anal penetrations. That same day, James received a physical examination from Dr. Elizabeth Witman ("Dr. Witman"), a general pediatrician on staff at Wake Medical Children's Hospital. Dr. Witman testified that the results of this exam were normal, including the genital/anal exam. She testified that it did not surprise her that James' exam was normal, as abnormal physical findings in cases of child sexual abuse are exceptional, in about five percent of cases. Dr. Witman stated that the lack of physical findings were consistent with James' disclosure of sexual abuse.

James began seeing therapist Miriane Portes ("Ms. Portes") on 1 December 2017. Ms. Portes had a bachelor's degree in psychology, a master's degree in social work, a certification in Eye Movement Desensitization and Reprocessing (EMDR) therapy (a trauma-treatment therapy), and was deemed by the trial court to be an expert in trauma therapy. James met with Ms. Portes regularly over the ensuing months, and began to relate to her in a piecemeal fashion what he remembered while engaging in EMDR. It is not entirely clear from Ms. Portes' testimony how or when James disclosed the alleged anal penetrations; on 22 January 2018, he described defendant coming into the room and thrusting his genitals towards him and pulling his arm back. He continued to discuss feelings of guilt from the experience over the next few sessions. On 5 June, Ms. Portes attempted to create a chronology of the abuse James suffered; at this session, James

told her that defendant penetrated him 8–9 times. Sometime in the spring of 2018, Ms. Portes diagnosed James with PTSD; she testified that the symptoms he was experiencing were consistent with the trauma had reported.

Defendant did not present any witnesses during the trial, and evidence closed at the end of Ms. Portes' testimony. Defendant moved to dismiss all charges, which the trial court denied. The jury found defendant guilty on all charges, and he was subsequently sentenced to 364 months minimum, 536 months maximum active prison sentence. Defendant gave notice of appeal 7 August 2023.

On 22 April 2025, the State filed a Motion to Correct Error in Appellate Brief. We exercise our discretion to allow the motion and incorporate the correction into the State's argument on appeal.

## II. Discussion

Defendant raises five issues on appeal: (1) whether the indictment provided sufficient notice that defendant had been charged with the offense of which he was ultimately convicted; (2) whether the trial court erred in sentencing defendant to the mandatory 300 month minimum sentence for a sexual offense with a child by an adult, since he was not indicted for this offense; (3) whether the trial court committed plain error by allowing expert testimony that vouched for the credibility of the victim and constituted an improper opinion of guilt; (4) whether the trial court committed reversible error by denying defendant's motion to dismiss the charge of first degree

statutory sexual offense; and (5) whether defendant's trial counsel rendered ineffective assistance of counsel.

### A. Standard of Review

In order to preserve an issue for appellate review, a party must object before the trial court; otherwise, the issue is deemed waived. N.C. R. App. P. Rule 10(a)(1). However, in criminal cases, even if an issue is unpreserved, it may be raised for the first time on appeal on the basis of plain error. *Id.* Rule 10(a)(4). Plain error is a fundamental error that so affected the trial proceedings that the jury would have returned a different verdict absent the error. *State v. Lawrence*, 365 N.C. 506, 518 (2012). Plain error is to be applied cautiously and reserved for exceptional cases. *Id.* Where we find plain error to have affected a jury verdict, the appropriate remedy is to order a new trial. *See, e.g., State v. Towe*, 366 N.C. 56, 63 (holding that testimony characterizing a victim as sexually abused amounted to plain error, and ordering a new trial). Because defendant counsel did not object to the testimony of the expert witnesses at trial, we review this issue for plain error.

### B. Impermissible Vouching

"Our appellate courts have consistently held that the testimony of an expert to the effect that a prosecuting witness is believable, credible, or telling the truth is inadmissible evidence." *State v. Bailey*, 89 N.C. App. 212, 219 (1988) (citations omitted). The application of this holding to cases involving the alleged sexual abuse of children has produced the rule that an expert witness, in the absence of physical

evidence, may not testify that sexual abuse actually occurred. *State v. Stancil*, 355 N.C. 266, 266–67 (2002); *see also State v. Chandler*, 364 N.C. 313 (2010) ("And for expert testimony presenting a definitive diagnosis of sexual abuse, an adequate foundation requires supporting physical evidence of the abuse."). Improper testimony need not take form of an explicit statement by the expert witness that the alleged victim was sexually abused: we have held that a doctor testifying that a child's "disclosure" was "consistent with sexual abuse" was impermissible vouching, where the "disclosure" was the child's description of abuse. *State v. Frady*, 228 N.C. App. 682, 685–86 (2013). *But see State v. Betts*, 267 N.C. App. 272, 281 ("*Frady* does not stand for the proposition that use of the word 'disclosure' was error. Rather, the expert's testimony in *Frady* that the victim's description of the abuse 'was consistent with sexual abuse' was the equivalent of testifying the victim was credible.").

### 1. Miriane Portes

In the case *sub judice*, Ms. Portes made a number of statements during her testimony that communicated to the jury her own belief that James had been sexually abused by defendant, thereby engaging in impermissible vouching. Ms. Portes testified that "since there's a lot of avoidance with trauma, I knew that there was a lot of things that [James] hadn't reported yet . . . ." The entire basis for Ms. Portes' belief that there were "things" James had not yet reported was her belief that James had been sexually abused, as she almost explicitly states. In subsequent testimony, she stated, "I started understanding that some things [defendant did] were part of

the grooming behavior before it escalated to the wrestling incident." When Ms. Portes described the beginning of her therapy sessions with James, she stated that she "already knew why he was there because he had been referred by a colleague of mine, so I already knew that he was seeking therapy for sexual abuse." Ms. Portes does not use the term "alleged" or "reported" sexual abuse; rather, her testimony indicates that James was in therapy for sexual abuse that actually occurred. The State contends that this was merely a description of the referral process rather than vouching. Even assuming this is true, Ms. Portes should not have testified in this way, given the implication of the actual occurrence of abuse.

Finally, and perhaps most importantly, we address Ms. Portes' testimony that she diagnosed James with PTSD. Our Supreme Court has held that "evidence that a prosecuting witness is suffering from post-traumatic stress syndrome should not be admitted for the substantive purpose of proving that a rape has in fact occurred." *State v. Hall*, 330 N.C. 808, 821 (1992). The process for diagnosing PTSD is a therapeutic process, rather than a fact-finding one, and the jury may accord too much weight to this therapeutic diagnosis. *Id.* at 820. However, a PTSD diagnosis may be introduced for other purposes, such as corroboration or as explanation for delays in reporting. *Id.* at 822.

Ms. Portes testified that she eventually diagnosed James with PTSD, and that the symptoms with which he presented were consistent with the trauma that he had reported. This testimony is of the precise sort forbidden by *Hall*, and by extension,

*Frady* and *Stancil*: by stating that these PTSD symptoms were consistent with James' disclosures of the trauma of sexual abuse, Ms. Portes was in effect stating that these disclosures were more credible, because James had these symptoms. Not all of Ms. Portes' references to PTSD were necessarily in error, given that *Hall* permits the introduction of a PTSD diagnosis for the purposes of explaining delays in reporting. Because James's report of defendant's anal penetration came much later than his reports of defendant's other behaviors, a PTSD diagnosis would be useful in explaining this delay. Instead, however, Ms. Portes's testimony that she diagnosed James with PTSD was used as substantive evidence to bolster James' reports of abuse, which is impermissible.

## 2. Dr. Elizabeth Witman

Dr. Witman's interaction with James was limited to her physical evaluation of him as part of the SAFEchild Advocacy Center, however at trial she stated that the lack of physical findings was consistent with James' disclosure of sexual abuse. This testimony was in error.

"Whether sufficient evidence supports expert testimony pertaining to sexual abuse is a highly fact-specific inquiry." *Chandler*, 364 N.C. at 313. In *State v. Warden*, our Supreme Court reaffirmed the rule that a definitive diagnosis of sexual abuse was impermissible without supporting physical evidence, but declined to specify what would qualify as a "diagnosis" or whether a lack of physical evidence could be incorporated into an expert opinion. *See* 376 N.C. 503, 506–07 (2020).

In *State v. Davis*, this Court held that it was "impermissible for an expert to offer an opinion that a lack of physical evidence *is consistent with* sexual abuse . . . " while recognizing that "it may permissible for the State to offer expert testimony that the lack of physical evidence *does not necessarily rule out* that sexual abuse may have occurred." 265 N.C. 512, 517 (2019) (emphasis in original). On the other hand, in *State v. Perdomo*, we concluded that expert witness testimony that a girl's disclosure of sexual abuse was consistent with a lack of physical finding was not in error, since her testimony was based on her expertise and "provided the jury with an opinion, based on her expertise, that a lack of physical findings of sexual abuse does not generally correlate with an absence of sexual abuse." 276 N.C. App. 136, 141–42 (2021).

Here, Dr. Witman stated that her findings, specifically the absence of physical signs of abuse, were nevertheless consistent with James's disclosure of sexual abuse. She did not clarify that the lack of evidence did "not necessarily rule out" abuse, or provide a general opinion that the lack of physical findings does not generally correlate with an absence of sexual abuse, both of which may have been permissible under *Davis*. Instead, she described the lack of physical findings as "consistent" with a disclosure of sexual abuse, which is impermissible under *Davis*. Therefore, Dr. Witman's testimony amounted to impermissible vouching.

### C.    Plain Error

Because defense counsel never objected to Ms. Portes' or Dr. Witman's testimony, we review only for plain error. Applying the framework of *State v. Ryan*, we hold that impermissible vouching from this testimony rose to the level of plain error, requiring a new trial.

Expert testimony that amounts to impermissible vouching often draws no objection during trial, leading to a significant number of cases that have consequently reviewed this issue for plain error. *See, e.g., State v. Couser*, 163 N.C. App. 727 (2004) (holding that the physical evidence was insufficient to support the expert witness' opinion of sexual abuse, and other evidence was lacking such that the testimony was plain error); *State v. Crabtree*, 249 N.C. App. 395 (holding that one of the expert witnesses impermissibly vouched for the victim, but eyewitness testimony prevented this from rising to plain error). Our review of many of these cases has produced a useful framework for evaluating plain error under these circumstances:

> Notably, a review of relevant case law reveals that where the evidence is fairly evenly divided, or where the evidence consists largely of the child victim's testimony and testimony by corroborating witnesses with minimal physical evidence, especially where the defendant has put on rebuttal evidence, the error is generally found to be prejudicial, even on plain error review, since the expert's opinion on the victim's credibility likely swayed the jury's decision in favor of finding the defendant guilty of a sexual assault charge.

*State v. Ryan*, 223 N.C. App. 325, 337 (2012) (citations omitted).

In this case, there was no physical evidence indicating that an assault

occurred, as Dr. Witman's testimony emphasized. The State's evidence was primarily the testimony of James himself, with Mr. Gayno, Dr. Witman, Ms. Howell and Ms. Portes serving as witnesses corroborating James's story. Ms. Portes was the only one who testified that James had told her that defendant penetrated him, and it was her testimony that attempted to explain why it took James as long as he did to actually disclose the anal penetrations. Ms. Portes saw James for many months, and had more significant interactions with him on this matter than anyone else in his life, as James shared more memories with Ms. Portes than he did his own mother.

The errors of Ms. Portes's testimony are compounded when viewed in the context of Dr. Witman's testimony concerning the physical exam. Dr. Witman's testimony placed more weight and significance on the corroborating testimony of Ms. Portes. She also impermissibly vouched for the credibility of the allegations as previously discussed. Given the crucial role Ms. Portes played in the trial coupled with the vouching and de-emphasis of the lack of physical evidence from Dr. Witman's testimony, it is apparent from the transcript that their testimony "likely swayed the jury's decision in favor of finding the defendant guilty of a sexual assault charge." *Ryan*, 223 N.C. App. at 337. Because the jury would have reached a different verdict absent this impermissible testimony, we order defendant's sentence to be vacated and this case remanded to the trial court for a new trial.

### D. Sufficiency of Defendant's Indictment

We briefly address defendant's argument that the indictment under which he

was eventually convicted of statutory sex offense on a child by an adult was insufficient to place him on notice that he had been charged with that offense. We agree and address this issue to ensure that defendant is properly indicted and arraigned, and thereby properly placed on notice, before the commencement of his new trial.

Although defendant failed to raise the issue of a defective indictment before the trial court, a defendant may raise the issue of jurisdiction at any point, including for the first time on appeal. *See State v. Harwood*, 243 N.C. App. 425, 427–28 (2015). "On appeal, we review the sufficiency of an indictment *de novo*." *State v. McKoy*, 196 N.C. App. 650, 652 (2009).

A sufficient indictment requires the following:

> (1) The offense is charged in a plain, intelligible, and explicit manner; (2) The offense is charged properly so as to avoid the possibility of double jeopardy; and (3) There is such certainty in the statement of the accusation as to enable the accused to prepare for trial and to enable the court, on conviction or plea of Nolo contendere or guilty to pronounce sentence according to the rights of the case.

*State v. Reavis*, 19 N.C. App. 497, 498 (1973) (citation omitted). If these requirements are met, a reference to the wrong statute, and the caption of the indictment referring to the name of the wrong offense, is not fatal to the sufficiency of the indictment. *Id.*; *State v. Billinger*, 213 N.C. App. 249, 257 (2011).

The indictment at issue listed the offense as "First Degree Statutory Sex Offense," and cited N.C.G.S. § 14-27.29 as the statute violated. **{R 12}** At defendant's

arraignment, the State read the charge as "one count of first degree statutory sex offense," to which defendant pled not guilty. The jury verdict sheet listed the offense with this same name, and the trial court initially sentenced defendant under § 14-27.29 before the State noted that it was "the big B1." While defendant was ultimately sentenced in accordance with the minimum sentence required under § 14-27.28, statutory sex offense on a child by an adult, his judgment and commitment sheet read that he was convicted under § 14-27.29.

At trial, the State announced that defendant had been charged with first degree statutory sex offense with a child by an adult, although later that day the trial court referred to the charge as first degree statutory sex offense. During a motion conference, the State again referred to the charge as sex offense with a child by an adult, and during the charge conference and jury, the trial court referred to the offense in this way and read the proper elements of that offense, including the element that the defendant must be over 18. However, defendant was announced in open court of having been convicted of first-degree statutory sex offense.

It is clear from this summary of the various references to defendant's charge that the indictment violates the third requirement of the *Reavis* test: "such certainty" in the indictment to allow the defendant to prepare for trial and the court to pronounce sentence. We read the holdings of *Reavis* and *Billinger* relating to statute references and captions not as permission to ignore as a rule these portions of the indictment, but as guidance that when an indictment is otherwise clear, these aspects

will not render an indictment fatally flawed. Contained within defendant's indictment were all the facts necessary to convict under § 14-27.28; however, § 14-27.29 is a lesser-included offense, as it contains all the same elements except the adulthood of the defendant. It was *uncertain* under the indictment with which offense defendant had been charged, as was made clear by the confusion of the trial court.

Under *State v. Singleton*, our Supreme Court requires that a defendant raising the issue of an insufficient indictment must show prejudice. 386 N.C. 183, 210 (2024). Here, defendant was prejudiced by the insufficient indictment; the difference in length of the sentences he could receive under the two different offenses is significant, and, at the very least, may well have played a role in his decision to plead not guilty at his arraignment. Therefore, while we ultimately hold that defendant is entitled to a new trial due to the plain error of the expert witness testimony at trial, we also place the State and the trial court on notice that defendant's conviction would have been vacated if we were required to rule on the sufficiency of the indictment, and urge them to ensure that any errors of notice are addressed.

## III.   Conclusion

For the foregoing reasons, we vacate the sentence of the trial court, and remand for a new trial on these charges.

VACATED AND REMANDED.

Judge HAMPSON concurs.

Chief Judge DILLON dissents by separate opinion.

DILLON, Chief Judge, dissenting.

The majority's mandate is to vacate the judgment and remand for a new trial. For the reasoning below, my vote is to vacate the judgment sentencing Defendant under N.C.G.S. § 14-27.28 and remand, not for a new trial, but rather for entry of judgment sentencing Defendant based on the jury's verdict convicting Defendant of first-degree statutory sex offense under N.C.G.S. § 14-27.29. Accordingly, I respectfully dissent.

The majority reaches its result based on its conclusion that the vouching of the victim's credibility by two witnesses for the State constituted plain error. I certainly agree that the vouching was not competent evidence to prove Defendant's guilt. However, I conclude *the trial court* did not commit plain error concerning the vouching testimony for two independent reasons.

First, I do not believe *the trial court* erred at all concerning the vouching testimony, much less plainly erred.

Our Supreme Court recently explained that a defendant mounting a challenge on appeal based on plain error must show three things, including that "a fundamental error occurred at trial." *State v. Reber*, 386 N.C. 153, 158 (2024). In other cases, that Court has instructed that the fundamental error must be "error *by the trial court*." *State v. Duke*, 360 N.C. 110, 138 (2005) (emphasis added). *See also State v. Cummings*, 352 N.C. 600, 636 (2000); *State v. Walker*, 316 N.C. 33, 39 (1986). For instance, a defendant is entitled to plain error review where his attorney fails to

object to evidence offered at trial where the trial court previously made a ruling outside the presence of the jury that the evidence was admissible. *See State v. Williams*, 370 N.C. 526 (2018) (adopting dissenting opinion in 253 N.C. App. 606 (2017)). And a defendant may be entitled to plain error review where his attorney fails to object to trial testimony but where the trial court had an affirmative duty to intervene *ex mero motu* when the evidence was being offered. *See, e.g., State v. Jones*, 355 N.C. 117, 133 (2002) (holding the trial court errs by failing to intervene during a prosecutor's closing when the prosecutor makes grossly improper remarks).

However, where the error in allowing improper vouching testimony or other inadmissible evidence is simply that of a defendant's attorney failing to object, the defendant's remedy is to file a motion for appropriate relief alleging ineffective assistance of counsel. In such a case, the defendant has failed to meet the first prong of showing plain error, that a fundamental error was committed *by the trial court*.

In the present case, it may be that Defendant's attorney chose *not* to intervene based on trial strategy. Perhaps Defendant's trial counsel did not want to draw extra attention to the improper vouching statements by objecting to them. In any event, this mystery can only be resolved in a hearing on a motion for appropriate relief.

Second, even assuming the trial court had a duty to intervene to address the improper vouching statements, I conclude such error by the trial court did not rise to the level of plain error. The statements were, indeed, prejudicial to Defendant. However, Defendant has failed to demonstrate that the jury "probably" would have

reached a different verdict, but for the vouching. *See Reber*, 386 N.C. at 160. Specifically, there was evidence of Defendant's guilt apart from the vouching statement, including the victim's first-hand account of Defendant's acts.

My vote, though, is to vacate the trial court's judgment and remand for entry of a new judgment. I agree with the majority in its *dicta* contained in the section of its opinion titled "Sufficiency of Defendant's Indictment" that the trial judge should have sentenced under N.C.G.S. § 14-27.29 rather than under N.C.G.S. § 14-27.28.

The indictment states that Defendant was being charged for violating N.C.G.S. § 14-27.29, which requires proof that the defendant is at least four years older than his child victim. N.C.G.S. § 14-27.28, though, requires extra proof that the defendant is, in fact, at least 18 years of age.

Admittedly, there is no question Defendant was at all times relevant to this matter over 18 years of age and that the jury would have had no issue making this additional finding sufficient to convict Defendant under N.C.G.S. § 14-27.28. And I am not contending that the defect was jurisdictional. However, I agree with the majority that Defendant suffered prejudice by the pleading deficiency in the indictment as carried forward in subsequent proceedings. *See State v. Singleton*, 386 N.C. 183, 210 (2024). As noted by the majority, at his arraignment, Defendant was never asked to plead to a charge under N.C.G.S. § 14-27.28. He was merely asked to plead to a charge under N.C.G.S. § 14-27.29. And the jury's verdict sheet shows that they were convicting Defendant for violating N.C.G.S. § 14-27.29.

Defendant's belief that he was being prosecuted under N.C.G.S. § 14-27.29 may have played a role in his pleading "not guilty" at his arraignment and otherwise not negotiating a plea bargain, as a conviction under N.C.G.S. § 14-27.28 carries the possibility of a substantially greater sentence than the charge for which he thought he was being prosecuted. Surely, it is within the discretion of the prosecutor to charge a defendant with a lesser crime is (s)he so chooses, though the prosecutor may have evidence of the defendant's guilt of a greater crime.

Accordingly, my vote is to vacate the judgment convicting Defendant of and sentencing him under N.C.G.S. § 14-27.28 and remand with instructions that the trial court enter judgment convicting Defendant of violating N.C.G.S. § 14-27.29 and sentence him accordingly.